## Elizabeth Miller v. John Stepper and others.

*Dower: Will.* A will devising all the testator's lands to his children by a former marriage, and making no provision for the widow, and which was executed before his marriage with complainant, cannot impair complainant's right to dower in lands of which such testator died seized.

*Release: Fraud.* A release by the complainant in this case, of all her right and interest in the estate of her deceased husband, is held to have been obtained under circumstances which render it void for fraud.

*Dower: Deeds: Delivery.* Deeds of gift executed prior to the marriage, but not delivered until after it took place, are held to be no impediment to the right of dower in the lands.

*Dower: Mesne profits.* The right of the widow to a proportionate share of the mesne profits follows as a legal incident of her right of dower.

*Estates of deceased persons: Widow: Allowances: Distributive share.* The right of the widow to allowances, and to a distributive share of the surplus of the personal estate of her deceased husband, rests entirely upon statutory regulations, and not upon mere equitable considerations.

*Wills: Right of disposition: Superior claims.* The right of a testator to dispose of his property by will extends to all his property, and is available against all persons except in so far as the law has prescribed claims superior to his power.

*Right of disposition by will: Personalty: Debts: Administration expenses.* The testator's debts, however, and the expenses and allowances pertaining to administration, depend upon considerations superior to the testator's right to dispose by way of testamentary gift, and so far as necessary they must always control the dispositions of the will.

*Estates of deceased persons: Allowances to widow: Distribution.* The allowances to the widow, provided for by *chapter 156 of the Compiled Laws of 1871*, belong to the matter of administration, and rest on higher grounds than the claims of distributees; they are grounded upon a policy not unlike that which allowed the widow her quarantine and reasonable estovers at common law; and a testator can no more positively exclude them by the terms of his will, than he can the payment of debts and the legal charges of administration.

*Estates of deceased persons: Allowances to widow: Wills.* A will disposing of all the testator's estate and making no provision for the widow cannot affect her right to allowances under the first subdivision of *section 4377 of the Compiled Laws of 1871.*

MILLER *v.* STEPPER.

*Distribution of estates: Widow: Personal estate: Wills.* But the widow's right to a distributive share of one-third of the surplus of the personal estate is cut off by the gift by will to others of the whole personalty.

*Equity jurisprudence: Dower: Mesne profits: Distribution of estates.* The jurisdiction of the court of equity to adjudicate in this case upon the whole matter of complainant's right of dower, to mesne profits, and to distribution, is sustained against objection. The court, having regular cognizance of the cause for equitable relief, may rightly retain its cognizance to make the relief sufficiently ample to dispose of the controversy.

*Heard April 7.    Decided June 15.*

Appeal in Chancery from St. Joseph Circuit.

*Upson & Thompson,* for complainant.

*William Sadler* and *H. H. Riley,* for defendants.

GRAVES, CH. J:

The complainant is widow of Jacob Miller, with whom she intermarried February 27th, 1868. He was then a widower, and had been for some time, and she was the widow of a Mr. Dale.

From the time of complainant's marriage with Mr. Miller they lived as husband and wife until his death, just seven months later, namely, September 27, 1868. He died testate, and was about sixty years of age. He left two sons and three daughters, all children of his former marriage. They were Rachael, Elizabeth, Sophia, William Henry, and Perry. Rachael was the wife° of John Stepper, and Elizabeth of Christian Wollensleigle, and some time before the bill Sophia intermarried with Frederick Fogleman. The two sons were under age but have attained majority during the suit. The cause was commenced against the two sons and the three daughters and their husbands. But after answer, and at a late stage, Mrs. Stepper died, leaving an infant child, Charles Stepper, upon whom her rights are supposed to have devolved, and he was brought in, and his guardian filed the usual answer.

At his death, and for many years previous, Jacob Miller

lived at Burr Oak, St. Joseph county, upon a farm he owned in fee, and which is described as follows: The east half of the northeast quarter of section eleven; the west half of the northwest quarter of section twelve; the south part of the east half of the southeast quarter of section two, embracing sixty acres; the northeast quarter of the southeast quarter of section twelve. He was likewise owner of land in Branch county, described as northwest quarter of northeast quarter of section thirty-two, township six south, of range eight west. From her marriage with Mr. Miller until his death, complainant lived with him on the farm at Burr Oak. Much of this place was under cultivation. It had a commodious and well-furnished dwelling-house, suitable out-buildings, and was adequately supplied with stock and implements.

On the 9th of February, 1867, and about a year before his marriage with complainant, Mr. Miller made his will, and thereby devised to his two sons, William Henry and Perry, in equal shares, the real estate of which he might die seized, and bequeathed to his daughter Sophia two thousand dollars to be paid out of his personal estate, and the whole residue of his personal estate he bequeathed in equal shares to his three daughters, Elizabeth, Rachael and Sophia, except an item of interest to be paid by Rachael. He appointed his son-in-law, Wollensleigle, executor.

About a year after making this will, and a little more than a month and a half before his marriage with complainant, namely, on the 4th of January, 1868, Mr. Miller executed two warranty deeds; one of which purported to convey the Branch county land, and the other the St. Joseph county land, to his two sons, William Henry and Perry, for a nominal money consideration, and the further consideration of natural affection. At the time of his decease on the 27th of September, 1868, he continued owner of these lands, unless the deeds just mentioned had passed them to his sons.

On the 29th of September, 1868, being two days after

his death, the complainant, by the persuasion of the two sons-in-law, Stepper and Wollensleigle, gave them an instrument in writing, which purported to be her relinquishment of all her right and interest in the estate, for the consideration of four hundred dollars and a bed. They delivered the bed, and gave their note payable in thirty days for the four hundred dollars.

No further description of this paper is needed, because it is conceded that it was obtained under circumstances which must deprive it of all legal force against Mrs. Miller. It was clearly fraudulent.

Very shortly after this transaction Wollensleigle propounded the will for probate, and on the fifth of November, 1868, the court allowed it as well proved, and committed its execution to Wollensleigle, the named executor, and appointed appraisers. On the thirteenth of the same month the executor filed the inventory and appraisal.

The value of the whole estate was given as twenty-two thousand four hundred and ninety dollars and fifteen cents: the realty before named being set down as *that of the estate,* and as worth seventeen thousand three hundred dollars, and the personalty as worth five thousand one hundred and ninety dollars and fifteen cents.

Public sale was afterwards made of a portion of the personalty, for eight thousand eight hundred and thirty-two dollars and ninety-eight cents, and yet leaving undisposed of an amount valued at two thousand three hundred and ninety-eight dollars: so that the whole personalty must have been actually worth eleven thousand two hundred and thirty dollars and ninety-eight cents. The indebtedness of the estate was five hundred and twenty-eight dollars. So far as appears, the settlement of the estate proceeded under the will without any opposition or interruption.

Shortly after the appraisal before mentioned, and on the sixteenth of November, 1868, Mrs. Miller filed this bill. She asked to have the release of the twenty-ninth of September, 1868, set aside as fraudulently obtained, that the two deeds

of the fourth of January, 1868, running to the sons, should be cancelled, and that dower be assigned her in the foregoing lands, and that her rights in the estate might be declared and settled, and for general relief.

The cause was at length heard on pleadings and proofs, and the circuit judge, after a very thorough examination, decreed that the release of the twenty-ninth of September, and the two deeds of the fourth of January, should be set aside; that complainant was entitled to dower in the lands, and to one third of the mesne profits, computed from Mr. Miller's death. Also that she was entitled to the household furniture to the amount of two hundred and fifty dollars, and other personal property to the amount of two hundred dollars, and in addition thereto to one-third of the residue of the whole personalty, after payment of debts and funeral charges and expenses of administration. The decree provided for the setting out of dower in the realty, the ascertainment of the mesne profits, and the execution of the other relief granted.

The defendants Wollensleigle and wife, Sophia Fogleman, and William Henry Miller, alone appealed.

Of course it has not escaped attention that by his will Mr. Miller contemplated a disposition of his entire estate, real and personal, and that the will was made some time before his marriage with complainant, and contained no kind of provision whatever for her. Its validity has not been drawn in question, and the settlement of the estate appears to have been proceeded with in the court of probate as upon a legal testament. The controversy in this court is mainly as to the measure of complainant's rights in the estate notwithstanding the will.

That it cannot impair complainant's right to dower in the lands, is, as we understand, fully admitted, and we know of no ground on which a contrary claim could rest.

The release of the 29th of September, as before stated, is properly admitted to be invalid, and hence that is not in the way.

MILLER *v.* STEPPER.

The only remaining impediment to the right of dower in the lands is found in the two deeds to the sons, a little more than a month and a half prior to the marriage; and their force as against complainant depends chiefly upon whether they were delivered before the marriage so as to take effect as conveyances.    For, if their delivery, if they were ever delivered, did not occur so as to give them effect as conveyances, until after the marriage, then they have never had any force against her right of dower.    Now it would be a waste of time to repeat the evidence upon this subject, or even to enter into a discussion about it.    The circuit judge examined it fully and fairly, and was of opinion that it failed to show a delivery at any time during Mr. Miller's life-time, and there are strong grounds for that opinion.    It is sufficient, however, for the present purpose, to say that the proof completely fails to satisfy us, either that the deeds were delivered, or that the defendants regarded them as having been delivered, prior to the marriage.    If the defense on this point has been in good faith, it is somewhat singular we should find that the lands were regularly inventoried and appraised as property of the estate, and that nothing should be shown to explain this circumstance, and point out that the mistake, if it was one, has been corrected.    But we entertain no doubt of the non-delivery before the marriage, and therefore, upon this point of the complainant's case, her right is clear.    Upon the death of Mr. Miller she was entitled to dower in the lands, and the release of the 29th of September being fraudulent against her, her claim still remains valid.

This being established, her right to a proportionate share of the mesne profits appears clear.    They follow as legal incidents of the principal right.

There seems to be no dispute but that the executor, immediately after the death of the testator, went into possession, and has since had perception of the rents and profits, and that complainant has been precluded from all enjoyment.    And it is equally undisputed that the use of the

realty was not required to pay debts or expenses of administration. The` receipt of rents and profits by the executor could have no other purpose than to swell the fund derivable from the personalty, and there is no ground for claiming that the dower interest was subject to be used to contribute to the enlargement of that fund.

We next come to that branch of the case which concerns complainant's right to share in the personalty left by the testator.

As already stated, the circuit judge was of opinion that over and above the specific allowance of four hundred and fifty dollars she was entitled to a distributive share of one-third of the amount left after payment of debts, funeral charges and expenses of administration.

This view of the case is strongly controverted by counsel for appellants, and as strongly insisted on by complainant's counsel. And how far it can be supported, or whether in any part it can be supported, must depend upon the force of statutory regulations as they actually exist, and not upon any opinion as to what the legislature should have prescribed.

On the part of appellants it is urged that Mr. Miller having by his will lawfully disposed of all his personal estate, though without any provision for complainant, the regulations in *ch. 156, C. L.*, for specific allowances and for distributing a share of the personalty to the widow, are in terms inapplicable; that the right to the allowances, as well as to a distributive share, only exists where there is personal estate not lawfully disposed of by the will, and hence that complainant was neither entitled to the allowances mentioned in the statute, or to a distributive share.

On the part of complainant it is insisted this construction is harsh and unreasonable; that it makes the widow's right to share at all, even to the extent of the allowances mentioned, depend upon the testator's having made some provision in his will in favor of his wife, which she may waive, and therefore leaving it in the power of the husband, if his estate is wholly personal, to deprive her altogether, by simply

omitting all provision in her favor and giving the whole to others. No such purpose, it is said, should be imputed to the legislature, unless so clearly expressed as fairly to compel the court to yield to the terms used; and such, it is further urged, is not the case here. On the contrary, it is contended, when the husband dies testate and makes no provision whatever for his widow, and gives all his property, real and personal, to his children or others, his estate, as to the widow, is to be regarded as intestate and open to her legal claims, which include a right to one-third of the personalty remaining after payment of debts, funeral charges and expenses of administration.

We are not prepared to assent to the position of either side on this branch of the case.

*First*, We cannot admit that the husband may exclude the widow from all the personalty, by omitting all provision in his will in her favor and giving the whole estate to others; and *second*, we cannot admit that such omission and gift to others will have the effect to remit the widow to the same right and share as though the husband had died without any will.

The right of the husband to dispose of his property by will is undoubted, and this power of disposition extends to all his property, and is available against all persons except in so far as the law has prescribed claims superior to his power.

He cannot cut off creditors, nor the proper charges and allowances pertaining to administration and settlement of his estate. He cannot cut off the widow's right to dower in his lands, against her will. But, apart from the exceptional limitations upon his power of disposition, he may dispose of his own property according to his pleasure.

During his life-time, if no creditors stand in the way, he may give all his unexempt property to persons other than his wife, and without her consent, and her sole claim will consist of her contingent right to hold dower in the realty;

32 MICH.—26.

and when he dies he may give by will to persons other than his widow, whatever personal estate he possessed, not needed to pay debts, and not required for the statutory allowances and expenses of administration.

Whether provision is or is not made by the will in favor of the widow, the debts must be paid, and the expenses and allowances pertaining to administration must likewise be satisfied.

These depend upon considerations superior to the testator's right to dispose by way of testamentary gift, and so far as necessary they must always control the dispositions of the will.

Now, we understand the allowances provided for in *ch. 156, C. L.,* to belong to the matter of administration of the estate, and to rest on higher grounds than the claims of distributees. They are quite distinct from distribution, and are inseparably connected with the course of settlement of the estate. They are grounded upon a policy not unlike that which allowed the widow her quarantine and reasonable estovers at common law, and in some measure are deemed suitable means to enable administration to be carried to that stage at which distribution may be made; and the testator by the terms of his will can no more positively exclude them, than he can the payment of debts and the legal charges of administration. And in case of a will, like that before us, containing no provision for the widow, her right to allowance under the first subdivision of section one of the chapter referred to, is wholly unaffected. Whilst her right to a distributive share of one-third is cut off by the gift of the whole personalty to others, her right to allowance under this statute is independent of the will, and superior to its dispositions. It is an allowance ordained by the law itself, and not subject to be hindered by the exercise of the testamentary right of the husband. It does not depend at all upon the non-existence of a will. The law which gives it expressly supposes there may be a will, and not only so, it also supposes such will

may contain provisions in favor of the widow, and then in substance enacts that notwithstanding this she shall still have the allowance if she waives such provisions.

The real sense of this regulation is, that, whether there is a will or not, the widow shall be entitled to this allowance unless there is a provision by will in her favor in which she acquiesces.

Upon this part of the case the conclusion then is, that it was competent for Mr. Miller to dispose of all his personalty, as he did, away from complainant, but subject to the positive requirement of the statute for her allowance of the four hundred and fifty dollars.

The other allowances mentioned in the statute are not here in question.

It is not the province of this court to enter upon a disquisition in respect to the propriety or justice of these regulations. But an examination of the whole subject makes it impossible to avoid seeing that, in regard to the personal power over property in this state, those intrusted with the authority to frame our laws have seen fit to leave to the husband a very ample power of disposal by will and otherwise, and at the same time to leave to the wife a right considerably more ample.

For example, if the situations of Mrs. Miller and her husband had been reversed, and she had owned the property in question, and had died, leaving the whole of it by will to others, he could not have sustained a claim to a distributive share of the personalty, or a claim to any estate or interest whatever in the realty.

The appellants object to the jurisdiction. They urge that it is irregular for a court of equity to adjudicate upon the whole matter of dower, mesne profits and distribution.

Upon this point we have no doubt. The complainant was driven to equity to get relief against the release fraudulently obtained and set up against her, and against the deeds interposed to obstruct her right; and likewise to be admitted to her dower and other rights which were denied her.

The ground of jurisdiction is, therefore, quite plain, and the court, having regular cognizance of the cause for equitable relief, may rightly retain its cognizance to make the relief sufficiently ample to dispose of the controversy.

The decree should be modified according to this opinion, neither party recovering costs of this court as against the other, and the cause be remanded to the court below for further proceedings.

CAMPBELL and COOLEY, JJ., concurred.

Only three judges sat in this case.