BERNER *v.* BROWN.

1. WITNESSES — CANCELLATION OF INSTRUMENTS — HUSBAND AND WIFE.

In a suit, commenced after the death of plaintiff's husband, to set aside certain conveyances of real and personal property made by plaintiff to her husband in pursuance of a property settlement agreement between them upon their separation, testimony as to what was said by an uncle of the husband, who lived in their home for a time, and who conveyed to them his property in consideration of his support and maintenance, after the husband's death, *held*, inadmissible.

2. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

Testimony by plaintiff that was equally within the knowledge of her deceased husband, *held,* properly excluded.

3. EVIDENCE—ADMISSIBILITY.

Where plaintiff's counsel were permitted to show her physical condition at the time of the transaction in question, there was no error in excluding testimony as to her condition a long time previously.

4. HUSBAND AND WIFE—SEPARATION AGREEMENT—PROPERTY SETTLEMENT—PUBLIC POLICY.

A separation contract between husband and wife, including property settlement, not executed until after they had actually separated, is not void as against public policy because the negotiations were had while they were living in the same house, where they were not living together as husband and wife should.

Appeal from Calhoun; Collingwood (Charles B.), J., presiding. Submitted October 18, 1923. (Docket No. 71.) Decided April 10, 1924. Rehearing denied June 18, 1924.

Bill by Rose Berner against Mary Ida Brown and others to set aside certain conveyances of real and personal property. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*William E. Ware* (*James M. Powers,* of counsel), for plaintiff.

*O. Scott Clark* and *Willard A. Knight,* for defendants.

MOORE, J. The plaintiff is the widow of Carl F. T. Berner, deceased. Mary Ida Brown and Louise Nicewander are sisters, and Otto Berner is a brother of the deceased. Carl F. T. Berner died on February 9, 1920, and soon thereafter Willard A. Knight was appointed special administrator of his estate. This gave rise to litigation which found its way into this court, and the case is reported as *In re Berner's Estate,*

217 Mich. 612.    It is claimed by the appellees in the
instant case that the opinion in that case is controlling
here.    The appellant does not assent to that con-
tention.    A reading of the opinion, however, will
throw light upon some of the questions involved here.

While plaintiff and her husband were living together
a contract was made between them and John Berner,
an uncle of Carl, reading in part as follows:

"It is agreed by and between Carl F. T. Berner and
Rose Berner, his wife, parties of the first part, and
John Berner, party of the second part, as follows:

"Whereas, the said John Berner, having now arrived
at an advanced age in life, desires to live with the
parties of the first part in their home, where he can
be comfortable the remainder of his life and to that
end has assigned and transferred to the said Carl F.
T. Berner certain notes and mortgages belonging to
him, and does hereby assign and transfer to him all
other property of every kind, if any, which he now
has or may hereafter acquire, to compensate the said
parties of the first part for furnishing to him a home
with them as aforesaid, and for the covenants on their
part hereinafter set forth, and the performance of the
same by them and each of them, and the said John
Berner is now living with the said parties of the first
part in their home under such an arrangement between
them.

"Now therefore, the said parties of the first part,
in consideration of the premises, jointly and severally
covenant, promise and agree to and with the said party
of the second part that he may live in their home
with them during the remainder of his life, and dur-
ing all that time they will furnish him with a com-
fortable home with them or with the survivor of
them,    *    *    *    and that upon his demise, they will
pay the expense of his funeral and burial.

"And the said John Berner hereby confirms the
transfer of his property to said Carl F. T. Berner for
the purposes herein set forth," etc.

The married life of the plaintiff and her husband
was not pleasant and they permanently separated

November 26, 1919.    At that time a contract was
made between them, which is the contract referred to
in the opinion by Justice CLARK in the case before
cited.

It may be well to quote more from that contract than
appears in Justice CLARK'S opinion:

"Memorandum of agreement, made and entered into
this 24th day of November, A. D. 1919, by and between
Carl F. T. Berner of the city of Battle Creek, Michigan,
party of the first part and Rose Berner, his wife, of
the same place, party of the second part in manner
following:

"Whereas the said parties have been legally married
and lived as husband and wife for several years last
past in the city of Battle Creek, Michigan, and certain
differences have arisen between them which have
caused the parties to determine that they can no longer
continue the marriage relations and cohabit as hus-
band and wife and it is the desire of both parties to
finally and for all time settle and determine their
property rights, all right of support and maintenance
of the said second party by the said first party, all
dower and homestead rights, together with any and
all other rights existing between the said parties
growing out of the marriage relation and any other
relations that may have heretofore existed between
them or between the said parties hereto and one John
Berner, uncle of the said first party, Carl F. T. Berner.
Therefore, the said parties hereto for and in con-
sideration of the mutual promises herein made and
of the acts to be performed by the respective parties
hereto, each covenant and agree as follows:

"Certain real estate belonging to said parties has
been held by entirety and certain mortgages and per-
sonal property has been held jointly by them, also
certain property has been conveyed by John Berner
above mentioned uncle of the said Carl F. T. Berner,
first party under a written agreement executed be-
tween said parties wherein said parties hereto
covenanted and agreed to provide a home for the said
John Berner with the said parties hereto in considera-
tion of which he transferred to the said parties certain
properties some being conveyed directly to said first

party, some to both and some to said second party and it is mutually agreed that any and all of such real estate shall be conveyed to a third person and by such third person re-conveyed as hereinafter designated and that the personal property shall be so assigned and transferred between said parties that the ownership shall vest in the respective parties hereto as hereinafter designated, which after considerable negotiations between the said parties hereto has been determined upon by them after advice of their counsel, each party and each party's counsel have full knowledge and possession of all of the facts relative thereto as hereinafter set forth; it is further agreed as a part of the consideration of this agreement that the said first party shall take with him the said John Berner, his uncle, and provide a suitable home for him and provide for his care and maintenance in sickness and health and finally his burial in proper form as set forth in the contracts and agreements made between the said John Berner and the said parties hereto and in consideration of which agreements the properties hereinbefore referred to were conveyed by the said John Berner to the said parties hereto and save harmless the said second party from any and all costs, expense or damages, should any arise for the failure of the carrying out of said agreements and the said first party hereby assumes and agrees as a part of the consideration herefor to fully carry out said agreement above referred to made with the said John Berner.

"It is mutually agreed that the said second party shall receive as her share of the properties of said parties hereto to be conveyed to her from the said third party above mentioned the following (Then follows a long list of properties.) :

"And all of said property shall thereupon become the sole and separate property of said second party free and clear from any claim or lien thereon by said first party or by said John Berner, uncle of said first party herein mentioned.

"It is further agreed however that the said second party shall pay to said first party the sum of one hundred fifty ($150.00) dollars in cash on the execution and delivery of this agreement.

"It is mutually agreed that the said first party shall

receive and become the absolute owner of the follow-
ing property (Then follows a long list of properties.) :

"Said second party further covenants and agrees to
cause to be assigned and transferred to the said first
party any and all interest of any kind, name or nature
that she has received in any of the property, real or
personal, of the said John Berner, uncle of said first
party, so that all of the said property which has come
into her possession in any way, except that set apart
to her by the terms of this agreement shall belong to
and become the sole and separate property of the said
first party, free from any claim, lien or incumbrance
of any kind in the said second party.

"It is further specifically understood and agreed
that out of the sums allotted to said second party, one
hundred fifty dollars thereof has been set apart to
her so that in case at any time hereafter she should
determine that a divorce suit should be instituted be-
tween said parties that the sum to pay for the costs
and expenses thereof have been awarded to her in
advance and if she should not so determine the sum
shall be used by her for any other purpose she may
see fit, and the said second party hereby acknowledges
receipt of said sum to be used for such purpose if
she should at any time hereafter decide that a divorce
between said parties should be necessary and proper
that in such case the costs have been paid in advance
and the said first party shall not be called upon in any
way to pay any costs therein."

Here follows the quotation from the contract which
appears in the opinion of Justice CLARK, which we
think it unnecessary to repeat here.

We quote further:

"It is further agreed between the parties that should
a divorce proceeding at any time hereafter be in-
stituted that the terms of this agreement may be
entered as a part of any decree entered therein should
the parties hereto so desire and should the same be
deemed necessary by the court in said cause and for
that purpose the proposed decree before it is submitted
to the court shall be submitted to counsel for each
party hereto for examination and alterations if neces-

226—Mich.—29.

sary so as to properly incorporate the terms of this agreement as set forth herein before the same is submitted to the court for final approval and signature.

"In witness whereof the said parties hereto have after consultation with their respective counsel relative to the matter herein set forth and agreed upon, having been advised fully and fairly as to all of the facts and circumstances herein set forth, have hereunto set their hands and seals the day and year first above written.

"Executed in duplicate."

For the purpose of carrying out the agreement Mr. and Mrs. Berner, on the 29th day of November, A. D. 1919, made a deed of all their real estate to a third party, which deed was witnessed by the attorneys of the respective parties, and was acknowledged before the attorney for the .plaintiff, acting as a notary public. The third party then made the proper conveyances to perfect the title to the property which was to go to the plaintiff and to Carl F. T. Berner, respectively, and these conveyances were put upon record. The necessary conveyances were also made to dispose of the respective interests in the mortgages and other property, which was the subject of the agreement. A separate paper was also made and delivered for the purpose of saving Rose Berner harmless from any possible liability growing out of the John Berner contract, and stating:

"The said Rose Berner does hereby sell, transfer, assign and set over to said Carl F. T. Berner, all her right, title and interest in said contract with said John Berner, and all benefits to her arising therefrom; and she does hereby assign and transfer to him any and all interest of every kind received by her in the property, real and personal, of the said John Berner, except such thereof, if any, as may be included in the property transferred to her by her settlement with said Carl F. T. Berner, above mentioned, and except pension money heretofore received by her from said John Berner."

After the plaintiff and her husband separated John Berner lived with his nephew Carl until the latter died. Upon the day of his death the plaintiff sent her nieces to where John Berner was living, and he was brought to the home of the plaintiff. He remained there three or four days when, after a scene which plaintiff characterizes as a fight, he went away or was taken away by his nephew, Mr. Brown, a deputy sheriff, and Mr. Knight.

The bill in the instant case was filed to have the conveyances and papers which conveyed any interest in the property either real or personal to Carl F. T. Berner set aside. An answer was put in by the defendants and accompanying it was a copy of a bill for divorce in a proceeding commenced by Carl against the plaintiff, which was pending when he died. The case was partly heard before Judge North, when the litigation arose before mentioned, which reached this court. After the opinion was handed down in that case, the hearing was resumed before Judge Collingwood and a decree was entered dismissing the bill of complaint. The case is brought into this court by appeal.

Much of the record is taken up by colloquies between counsel for the appellant and the two judges before whom the case was heard, in their rulings in relation to the admission of testimony. Much of this related to what had been said by John Berner after the death of Carl Berner, and when John Berner was living. We think there can be no doubt this testimony was inadmissible. Many of the rulings related to the exclusion of testimony from plaintiff that was equally within the knowledge of her dead husband. We think this was properly excluded.

An attempt was made to show the physical condition of the plaintiff for a long time before the papers were drawn. This was excluded, but counsel were

permitted to show her condition at the time of the transaction.    We think these rulings were right.

It is insisted the contract quoted by Justice CLARK was void because against public policy, as the parties were living together at that time.    It is clear from the testimony of the plaintiff that they were not living as husband and wife should, though they still occupied the same house.    Whatever may be said about that feature of the case, the conveyances which gave to the respective parties their interests in the property were not made until November 29th.    They were put upon record.    The plaintiff had the advice of counsel.    She knew what she was doing.    She has kept the property which was conveyed to her, and has never suggested its return.    Her present claim does not appeal to the conscience of the court.

The decree is affirmed, with costs to the appellees.

CLARK, C. J., and McDONALD, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.