JENNIE M. VAN DUSAN V. SYLVANUS W. VAN DUSAN.

*Divorce—Evidence of marriage.*

This case is held to be within the principle of *Rose v. Rose*, 67 Mich. 619, and the decree dismissing complainant's bill is affirmed.

Appeal from Macomb. (Canfield, J.) Argued June 7, 1893. Decided October 2, 1893.

Bill for divorce. Decree dismissing bill affirmed. The facts are stated in the opinion.

*Avery Bros. & Walsh (Northup & O'Donnell, of counsel),* for complainant.

*Eldredge & Spier,* for defendant.

HOOKER, C. J. The complainant sues for divorce upon the ground of cruelty. She alleges her marriage to defendant to have occurred on or about January 14, 1879, at the city of Detroit. The defendant's answer denies both marriage and cruelty.

The evidence clearly shows that no marriage ceremony was ever performed, at Detroit or elsewhere. According to complainant's testimony, she was persuaded to leave New York, where she resided, and come west with defendant, with whom she has consorted since. She claims to have refused several times before yielding to his importunities to go west with him, upon the ground that he had at the time a wife. She says that he told her that he was free from her, and that she believed he was free to marry, though he had no divorce. They visited several places, Detroit included, and finally went to Sarnia, where they passed as a Mr. and Mrs. Wilder. A child was born to

them about this time.    The complainant asserts that she importuned him to have a marriage ceremony performed, but that he always refused, saying that he was not ready; that he had some affairs to settle up first; and, finally, that it was not necessary,—that she was the same to him as though married, etc.    All this time he was treating her as his wife, and she went by his name after they left Sarnia.    There is an abundance of evidence that he called her his wife in society, and he gave her name as such to the census enumerator.    He had her sign mortgages, in which her name was inserted as his wife, and it was generally supposed in the neighborhood that she was his wife.

On the other hand, he stated to a few that she was not his wife.    When disposing of property in New York he did not have her sign his deed, but caused her to sign and swear to an affidavit, in which it was stated that she had never married him, to establish the fact that she was not his wife.    The parties had some difficulty in relation to one Boyd, with whom the complainant was once discovered by the defendant in a compromising position, and there is testimony that she said in connection with that affair that she was not married to the defendant.    The testimony of the defendant is flatly contradictory of the proposition that he ever agreed to take her as his wife.

Several witnesses testify to circumstances tending to show that the complainant knew that her relation to the defendant was not that of wife.    The testimony of the conveyancer who administered the oath, after explaining to her the affidavit that has been mentioned, is important.    If the complainant did know the contents of this affidavit, her conduct is at variance with the natural instincts of a wife. Martha Hicks testified that on her return from the notary's office she said: "You know we never were married.    I want him to marry me, but he won't."    George Boyd says that she told him that "she was not married to Van, and had

as good a right to live with me, or any other man, as she had with him;" and that she offered to go with him if he would marry her. The evidence that some arrangement of this kind was agreed upon by Boyd and the parties corroborates this. It was not carried out because Boyd did not come for her.

The evidence does not satisfy us that these parties ever availed themselves of the opportunity, offered them after the divorce was obtained, of changing their relation. Doubtless the complainant was willing, and we could wish that defendant had been honorable enough to grant her request; but it is not within our province to make a contract of marriage on account of commiseration for one or contempt for the other party, when the evidence does not show one to exist. We think the case within the principle of *Rose v. Rose,* 67 Mich. 619. We are therefore not disposed to disturb the decree of the circuit judge, who saw the witnesses, and, in our judgment, committed no error in dismissing the bill.

Decree affirmed.

The other Justices concurred.