BECHTEL v. BARTON.

1. Courts — Jurisdiction — Probate Courts — Ancillary Questions.
Where, in proceedings to administer an estate, a woman makes a claim as widow of decedent, the probate court has power to determine whether a marriage between her and decedent existed.

2. Marriage — Existence of Relation — Common-Law Marriage — Meretricious Origin.
On the issue of marriage vel non, evidence examined, and held, sufficient to establish a marriage by reputation, notwithstanding the cohabitation had its origin in an attempted common-law marriage, which was claimed to be invalid because the woman had a lawful husband living at the time.

3. Dower — Release — Effect.
A contract between husband and wife, by which they agree to separate, and which provides, as an adjustment of their property rights, that the husband shall pay certain sums in money and notes to the wife in full of all claim for dower, support, and otherwise, and that she shall transfer her interest in the household furniture and execute deeds releasing her right of dower in his lands, which contract is fully executed and followed by a separation, operates to prevent the wife from enforcing any claim against the husband's estate as his widow.

4. Same — Contract — Fairness — Evidence.
A contract by which a wife released her claims to her husband's property in consideration of certain payments of money and notes, examined in connection with the circumstances, and held, inequitable and unfair and properly set aside.

5. Same — Setting Aside — Returning Payments — Necessity.
In setting aside contracts by which wives release their interests in their husbands' property, it is not always necessary that rescission be accompanied by an offer to retransfer the property received.

Appeal from Kent; Perkins, J.  Submitted November 13, 1906.  (Docket No. 132.)  Decided March 5, 1907.

Bill by Fred J. Bechtel, executor of the last will and testament of Fred Hodges, deceased, against Angeline F. Barton to enjoin the prosecution of a claim in probate court for a widow's share of testator's estate. Defendant filed an answer in the nature of a cross-bill to set aside a contract of separation. From a decree for defendant, complainant appeals. Modified and affirmed.

*Ward & Brown,* for complainant.

*Taggart, Denison & Wilson (J. H. Clancy,* of counsel), for defendant.

OSTRANDER, J. In the course of proceedings to administer the estate of Fred Hodges, who died testate January 5, 1905, at Grand Rapids, Mich., and whose will, disposing of all his property, was admitted to probate in Kent county, the defendant filed in the probate court notice of her claim to be admitted to certain rights in the estate, as widow of the deceased, and a petition for an allowance pending settlement of the estate. No provision was made for her in the will. Thereafter, the executors of said estate filed in the circuit court for the county of Kent, in chancery, their bill of complaint, praying for an injunction restraining defendant from presenting or further prosecuting any petition or petitions in the probate court for the allowance of any sum or for any interest in said estate. The purpose of the bill is to have enforced against defendant, in bar of her asserted interest in said estate, a certain contract, made by her with her husband, and a settlement of property rights made pursuant to said contract; it being averred that upon presenting said matter to the probate court it was there ruled that said court had no power or jurisdiction to determine the validity and effect of the said agreement. The jurisdiction of the court of chancery is not questioned. The bill alleges a common-law marriage of the parties in December, 1876, and cohabitation thereafter until June, 1902, when they separated. Defendant answered the bill, and, claiming

affirmative relief, she asks to have the contract held to be of no validity; that it be canceled, and she be decreed to be entitled to her share in the estate. In the answer to the cross-bill, the executors, upon information and belief, deny that defendant was competent to contract marriage with said Hodges, and deny that any legal marriage ever took place between defendant and said Hodges, again admitting, however, that the parties lived and cohabited together as husband and wife until some time in the year 1902. The impediment to a lawful marriage is not stated. The will of Hodges, executed on the day of his death (there are no children of the marriage), contains the following:

" *Ninth.* I have not in making this will forgotten my sister   *   *   *   and have made a settlement and compromise with my wife, Angeline Hodges, concerning which matter there is at present pending a suit in the courts of this State. I have a brother.   *   *   *"

The cause came on to be heard in open court, and a decree was entered dissolving the preliminary injunction, dismissing the bill of complaint, holding the contract of June 20, 1902, to be void, and directing the probate court for the county of Kent to disregard said contract in the settlement of said estate, and advising it that defendant is entitled to her share of said estate in accordance with the statutes of this State. From this decree the surviving executor has appealed.

The defendant was a witness in her own behalf, and upon her direct examination she stated that she was married to decedent 28 years ago at some place near Hungerford, near Big Rapids, where both of them were working in the woods. On cross-examination, she stated that no marriage ceremony was ever performed; that she and Hodges simply went to living together as husband and wife; that she was married to a Demetrius Button when she was 17 years old (she was 59 at the time of the hearing), lived with him about 5 years, and had by him one child, now living; that Button is now dead, but was liv-

ing when she was married to decedent, and for 5 or 6 years thereafter.

" *Q.* You knew he was alive when you contracted this marriage with Fred Hodges?

"*A.* He didn't care. Yes, sir; I did. I didn't live with him. My father came and took me home."

Upon further direct examination, she testified:

" *Q.* You spoke about Mr. Button, to whom you were first married, and from whom you separated. Did Mr. Hodges know Mr. Button?

"*A.* Yes, sir.

" *Q.* Do you know whether Mr. Button was at your house after you and Mr. Hodges commenced to live together as husband and wife.

"*A.* Yes, sir.

" *Q.* You said something in your testimony on cross-examination in regard to Mr. Button, about your having been married to him, and that ' He didn't care.' To whom did you refer as ' he,' ' he didn't care ?'

"*A.* Mr. Button.

" *Q.* That Mr. Button didn't care ?

" *A.* No, because we made an agreement. My father—will I tell you ?

" *Q.* No. I say, who was it you referred to ?

" *A.* Mr. Button, I suppose.

" *Q.* That Mr. Button did not care ?

" *A.* No.

" *Q.* Who was it that didn't care ?

" *A.* Why it was Mr. Button that didn't care that I was married.

" *Q.* I do not quite understand what you say.

" *A.* I say that Mr. Button didn't care because I was married, because he took the farm and I took the child.

" *Q.* Did Mr. Button continue to live in the neighborhood ?

" *A.* Yes, sir.

" *Q.* After you and Mr. Hodges went to living together ?

" *A.* Yes, sir; he lived there until after we went into business and Mr. Hodges bought his farm. Then he went away.

" *Q.* Bought Mr. Button's farm ?

" *A.* Yes, sir.

" *Q.* Where was that ?

"*A*. It was six miles from Big Rapids down in the country."

What, if any, ceremony attended the marriage of defendant to Button does not appear, nor whether they were ever divorced. Whether defendant's relations with Button were known to Hodges is a matter concerning which the record furnishes no direct evidence, nor is there testimony of any witness to any other or further ceremony or understanding between defendant and Hodges after the death of Button. This testimony of defendant, with, perhaps, some other, furnishes the reason and the ground for attacking the validity of the marriage. Complainant asks for a decree adjudging the marriage to have been unlawful and void, and that the bill be amended in such manner as to present the issue of marriage or no marriage. On the other hand, counsel for defendant insist that the validity of the marriage is not, properly, a matter for consideration.

The issue of marriage or no marriage might have been determined in probate court. *Peet* v. *Peet*, 52 Mich. 464; *Burgess* v. *Stribling*, 134 Mich. 33. It is clear that the reason for asking the aid of a court of equity was not to determine the validity of the marriage. We prefer not to rest decision upon the point that the question of the marriage is not before us. Without questioning the rule that cohabitation, as husband and wife cohabit, meretricious in its beginning, will not be held to be marriage after disability to contract marriage is removed, without some further act or agreement of the parties equivalent, in law, to marriage, we have reached the conclusion that the rule should not be applied here, because not convinced that the marriage of Hodges and defendant was unlawful, or, if unlawful for the reason that defendant had a husband living when she contracted marriage with Hodges, that there was not, after the death of Button, a marriage. That from and after 1876 defendant and Hodges lived together as married people do, and were reputed to be married to each other, is not disputed, and the evidence

is conclusive that Hodges regarded defendant as his lawful wife.

In 1904, in the circuit court, in chancery, for the county of Delta, he filed his bill praying for a divorce from defendant, and in the bill he sets out that on December 25, 1876, "both of the parties hereto, being single persons, agreed to take each other presently as husband and wife and immediately commenced to live together as husband and wife."

In her answer to this bill of complaint, the foregoing facts are admitted; defendant asking for affirmative relief by way of divorce and alimony. This cause coming on to be heard, a decree was entered which recites that each of the parties has failed to prove the material facts alleged, and the bill was ordered dismissed with costs to defendant. This decree was entered August 16, 1904. It is said, as explanatory of the conduct of Hodges, that he may have been all of his life in ignorance of the former marriage of complainant. If we were to draw an inference, as we may, from the testimony, it would be that it is improbable that he could have lived with complainant, in the immediate neighborhood of her former home with Button, and have had personal and business relations with Button, as he did have, without learning of the marriage. Defendant's testimony is that she had been separated from Button for some seven years before she married Hodges. Button lived for six years after she married Hodges. The continued affirmance of the marriage relation by both Hodges and defendant during the life and after the death of Button, the separation and settlement of property rights, the divorce proceedings, and, lastly, the statement contained in the will of Hodges, are circumstances pointing strongly to a marriage, and their effect is not destroyed by the testimony of defendant herein set out. The case is, clearly, not ruled by *Rose* v. *Rose*, 67 Mich. 619, or by *Van Dusan* v. *Van Dusan*, 97 Mich. 70, and there is presented a stronger case for declaring the existence of

the marriage relation than was presented in *Barker* v. *Valentine*, 125 Mich. 336 (51 L. R. A. 787).

We have, then, to consider the effect and validity of the contract as one made between husband and wife. It is contended, for defendant, that it is void as against public policy; that it is not binding because procured by coercion, and because unjust and unconscionable. It is further contended that, if it is found to be valid, it does not, in any event, operate to release or prevent defendant from taking the statute share of the widow in the estate. The contention last stated may well be first considered. If it is sound, we need not consider the adequacy or inadequacy of the settlement provision or the good faith of Hodges. The contract sought to be enforced recites, as inducement, that the parties have lived together as husband and wife for, to wit, 28 years, and, by mutual consent and agreement by and between themselves, they will cease to so live together as husband and wife and live separate and apart; it is desired that an adjustment of their property matters be made. It is therefore agreed that the first party, the husband, will give to the second party $100 cash and nonnegotiable, noninterest-bearing notes for $3,900, due at various fixed dates, "which said notes and cash as aforesaid shall be in full of all claim to and right for dower, support and of all claims of every name, nature and description." The wife further agrees to transfer her interest in the household furniture, and to execute a deed releasing her right of dower in and to any real estate being in the name of and belonging to the husband. The parties did not thereafter live together. No support was thereafter provided to the wife. The money was paid, and the notes were executed and delivered to the wife. She executed a bill of sale of the furniture, and later a quitclaim deed of her dower in certain real estate.

We have examined certain decisions to which we are referred—among them *Moon* v. *Bruce*, 63 S. C. 126; *Kistler* v. *Ernst*, 60 Kan. 243; *Jewell* v. *McQuesten*, 68 N. H. 233; *Newton* v. *Truesdale*, 69 N. H. 634;

*Glass* v. *Davis*, 118 Ind. 593—and are of opinion they do not sustain the proposition that the contract in question, if valid, does not bar the demand now made by the widow. The cases referred to are in various ways to be distinguished from the one at bar. We are not called upon to determine whether, if the estate was intestate, the same ruling should be made. In *Glass* v. *Davis*, the deeds which were executed were held to be intended to operate as jointure, to affect the rights of the wife as widow only, and, as the husband died owning other realty, she should take as heir at law under the statute. In *Newton* v. *Truesdale*, the agreement did not provide that the parties should live separate, and did provide for a settlement of their respective interests by a division of their joint property. In *Jewell* v. *McQuesten*, the question whether by any form of contract the husband could convey or release to his wife, or estop himself from claiming his statutory rights in her estate after her decease, is, expressly, not considered. In *Kistler* v. *Ernst*, the wife died intestate without issue, and the contract in question was made before the marriage, and did not in terms exclude the husband from inheriting on the death of the wife. The court approved language used by Chancellor Kent in *Stewart* v. *Stewart*, 7 Johns. Ch. (N. Y.) 229, to the effect that, if it is intended in a marriage settlement to exclude the right of the husband to a share in the personal estate of the wife in case he survives her, and in default of her disposition of the same by will, an express provision to that effect is inserted in the deed. *Moon* v. *Bruce* turned upon a point not here involved.

Whether the arrangement was a fair one is therefore to be considered. In June, 1902, when the agreement was made, Hodges owned property worth from $20,000 to $25,000, and counsel for complainant contend that Hodges gave his wife substantially one-fourth of his property. But is that true? We are not now questioning the proportions stated, but the fact of his having given her property worth $4,000. Assuming the legal right to

make the contract (*Randall* v. *Randall*, 37 Mich. 563; *Rhoades* v. *Davis*, 51 Mich. 306), and that if $4,000 had been given to the wife the arrangement would not have been unconscionable, at least in view of lapse of time without clear rescission would not be set aside, we find that in fact he gave his wife $100 cash, and his unsecured, nonnegotiable notes, one for $400, due six months after date, one for $500, due one year after date, and three for $1,000 each, due in two, three, and four years, respectively, without interest. He paid but one, the first, of these notes. He declined, later, to give interest-bearing demand notes for those he had given, and declined to pay the notes with $1,000 deducted. He stated: "I had an object in drawing the notes as they are, and Mrs. Hodges will never get a damn cent"—this to a banker to whom the wife had applied with the notes, and who, though without authority from the wife so to do, had a conversation with him concerning them. Later he conveyed to his wife a parcel of real estate, worth no more than $1,200, in exchange for $3,500 of the notes. This real estate she sold for $1,000, and for all that it was then worth. This exchange of notes for real estate was made in September, 1902. The argument made by counsel to sustain the division of property as a proper one proceeds upon the idea that $4,000 was given to defendant. We feel obliged to say that neither Hodges nor his representatives may say that the notes were worth more than he paid for them, and that the provision actually made for her was not worth more than $1,700. It is true that she had, when the notes were so returned to Hodges, and perhaps had had before, advice of counsel, and it is also shown that in May, 1903, she executed, as Angeline F. Barton, a quitclaim deed of all dower and other interest, to Hodges, in a parcel of land in Newaygo county. But all of the facts must be considered. She was willing to be reconciled to her husband. It is not made to appear, and the inference may be drawn against the fact of knowledge, that she knew the merchantable

quality of the notes to be given to her. Hodges was not able to prove, to the satisfaction of the court, the conduct of his wife which was the stated reason for the separation. In his bill for divorce, he avers, as grounds for divorce, the illicit commerce of defendant with a person named, beginning just prior to the separation of the parties, and that from August 1, 1902, to October 1, 1902, she and said party lived "in open and notorious adultery with each" at a place named, and from about November 1, 1902, to the time of filing the bill they were still, at another place, so living in adultery. This conduct, he alleges, "has brought great disgrace and humiliation upon your orator, and her said actions have caused a public scandal in the city of Escanaba and vicinity;" and that since his discovery of her offenses on June 18, 1902, he has not voluntarily cohabited with her. Defendant, in her answer, denied these allegations, charges Hodges with offenses of the same nature, and prays for affirmative relief by way of a divorce and permanent alimony. In his answer to her cross-bill, Hodges sets up the contract here in question, and avers that he paid defendant $100 cash, $400 subsequently, and, "at her request and at her solicitation," in exchange for the remainder of the notes, gave her the real estate already mentioned. The matter was thus put at issue in that cause. His representatives rely upon the settlement of property matters as conscionable when made and as having been in any event ratified and confirmed by defendant; that she has not returned or offered to return the property she received.

We hold the settlement of property rights to have been inequitable and unfair, and also find, in the divorce proceedings, a demand by the wife for further consideration, a protest against the allowance made to her. In such cases, it is not always required that rescission shall be accompanied by an offer to retransfer property received. The case is in some respects like that of *Wright* v. *Wright*, 79 Mich. 527. Both parties appeal to equitable

considerations, and equity can be done by setting aside the contract upon condition that there be deducted from the share which would otherwise pass to the wife under the provisions of the statute (3 Comp. Laws, § 9300) the sum of $1,700; her share in the estate to be reckoned upon the value of the estate which decedent left. We take no account of rents received by the wife while she owned the property. There is imposed, also, the further condition that defendant execute such conveyance as is necessary to release all interest in and to the homestead which Hodges sold and conveyed before his death. It is to be inferred that the sum received by him on such sale has augmented the value of the personal estate.

The decree below will be modified to accord with this opinion, and, as modified, affirmed. As this modification is substantial, complainant should recover costs of this appeal.

CARPENTER, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.