### In re JEANNOT'S ESTATE.

HUSBAND AND WIFE—SEPARATION AGREEMENT—RELEASE OF PROP-
  ERTY RIGHTS.

    A postnuptial contract between husband and wife, by which
  they agree to separate, and which provides, as an adjust-
  ment of their property rights, that the husband shall pay
  a certain sum of money to the wife in full of all claim
  for support and maintenance, dower, etc., and that "each
  of said parties do hereby release any claims which they
  have, or may hereafter have, in or to the property of the
  other," which contract is fully executed and followed by
  a separation, operates to exclude the husband, as one of
  his wife's heirs, from maintaining a claim against her
  estate.

Error to Muskegon; Vanderwerp (John), J. Sub-
mitted October 8, 1920. (Docket No. 66.) Decided
December 21, 1920. Rehearing denied February 3,
1921.

Petition by Ruby A. Edwards, executor of the estate
of William H. Edwards, deceased, for the allowance
of his final account as administrator of the estate of
Florence B. Jeannot, deceased. From an order of dis-
tribution, excluding Joseph O. Jeannot, he appealed to
the circuit court. Judgment for defendant. Plain-
tiffs bring error. Reversed, and judgment entered for
plaintiffs.

*Hatch, McAllister & Raymond,* for appellants.

*Charles G. Turner,* for appellee.

Prior to the year 1913, Florence Jeannot and her
husband, Joseph O. Jeannot, the defendant herein, had
lived for a number of years in the city of Grand Rap-
ids. Due to differences which had arisen between

On validity of agreement between husband and wife renounc-
ing marital rights, see note in 12 L. R. A. (N. S.) 848.

them, however, they agreed, in February of that year, to separate and live apart.   Thereafter Mrs. Jeannot stayed for a considerable time at the home of her sister in the same town, but finally she moved to Muskegon, where she continued to reside until the time of her death.

Soon after leaving her husband, Florence Jeannot caused a bill for separate maintenance to be filed in the circuit court for the county of Kent, and a little later an application for temporary alimony and expenses was made.   That matter was still undisposed of on the 16th of October, 1913, when Mrs. Jeannot commenced proceedings for divorce.   Shortly afterward defendant appeared by his attorneys and demanded a copy of the bill.   So far as the record discloses, this was all that was done, although Mrs. Jeannot's attorney insists that she consulted him at different times "about getting it cleaned up."

On October 15, 1913—the day before the bill in the divorce proceeding was filed—the following agreement was drawn up and signed:

### "SEPARATION AGREEMENT.

"This agreement made and entered into by and between Florence Jeannot of Grand Rapids, Michigan, party of the first part, and Joseph O. Jeannot of Grand Rapids, Michigan, party of the second part, witnesseth:

"Whereas the said parties to this agreement are husband and wife and unhappy differences have arisen between them which they have been unable to harmonize and which have resulted in said Florence Jeannot filing a bill of complaint in the circuit court for the county of Kent, in chancery, against the said Joseph O. Jeannot as defendant, praying for an order requiring the said Joseph O. Jeannot to support her, the said Florence Jeannot, which said suit is now pending in said court and divers proceedings have been had and taken therein and various orders have been made in relation thereto, and

"Whereas the said Florence Jeannot is the owner of

certain real estate situate in the city of Muskegon, Michigan, and the said defendant Joseph O. Jeannot is the owner of certain personal property and a busi-ness situate at Grand Rapids, Michigan, and

"Whereas certain negotiations have been entered into by and between the counsel for the respective parties in behalf of said parties for a settlement and adjustment of all their property rights, which negotia-tions have finally culminated in the making of this agreement between said parties in relation thereto.

"Now, therefore, for the purpose of settling all of the property rights between the said parties hereto, it is hereby agreed to by and between the said parties, and the said Joseph O. Jeannot, party of the second part, does hereby agree to pay to the said Florence Jeannot, party of the first part, the sum of eleven hun-dred and fifty dollars ($1,150) in the following man-ner, to-wit, fifty dollars ($50) on the execution of this agreement, and fifty dollars ($50) on the 15th day of November, 1913, and the sum of thirty dollars ($30) or more on the 15th day of each and every month there-after until the full sum of eleven hundred and fifty dollars ($1,150) is paid and the said Florence Jeannot does hereby agree to accept the foregoing provision so made for her of eleven hundred and fifty dollars ($1,150) in full settlement of any and all rights that she may have upon the said Joseph O. Jeannot for support and maintenance, and does hereby release him from all obligations of her support and maintenance hereafter, and in full settlement of all moneys loaned and due from said second party to first party, and does hereby accept the same in full settlement of any and all alimony, solicitor's fees, and other allowances growing out of the suit now pending between said parties, and does hereby release any and all dower rights which she now has, or may hereafter have in any property of the said Joseph O. Jeannot, and each of said parties do hereby release any claims which they have, or may hereafter have, in or to the prop-erty of the other, and in case either of said parties hereto should at any time make application for divorce from the other the foregoing provisions shall be in lieu of any and all permanent and temporary alimony or expenses that may be incurred therein, it being the in-

tention by this agreement to settle all property rights between said parties and to make full provision for the support and maintenance of first party and to release said second party from all obligations in relation thereto.

"In witness whereof the parties hereto have hereunto set their hands and seals this 15th day of October, A. D. 1913.

"FLORENCE JEANNOT (L. S.)
"JOSEPH O. JEANNOT (L. S.)"

This contract was fully carried out, the defendant making the payments therein agreed upon, which he completed some time before the death of his wife, which occurred on the 2d day of February, 1918. She left no will, and the defendant, claiming that he had never relinquished any claim as her husband and heir at law, sought to have himself appointed as administrator of her estate.

Thereupon the plaintiffs (the heirs at law of Florence Jeannot) filed a bill in the circuit court for the county of Kent, in chancery, against Mr. Jeannot to enforce the provisions of the postnuptial agreement. From the decree there rendered an appeal was taken to this court. Our opinion in that case will be found reported in 204 Mich. 403, where it is said,

"The probate court of Muskegon county, having assumed jurisdiction of the subject-matter, viz., the estate of Florence B. Jeannot, deceased, has exclusive jurisdiction with reference to matters concerning that estate which it can properly hear and determine. *Brooks* v. *Hargrave*, 179 Mich. 136. The question then is, Can the probate court determine the rights of the parties to this agreement? In my opinion, it can clearly do so upon the final hearing as to the distribution of the estate. The plaintiff and other heirs of the deceased can at that time present this agreement, and the probate court can then determine whether or not it should be a bar to the defendant's claim of any right to the estate of the deceased."

In accordance with the above decision, upon a hearing of the order of final distribution, this agreement was presented to the probate judge who held that "by reason of said contract, Joseph O. Jeannot has no interest in the estate of said deceased." From this finding the defendant appealed to the circuit court, where the order of the probate court was reversed 'and a judgment entered, giving defendant one-half of the estate of his deceased wife.

From this judgment, plaintiffs bring error.

BROOKE, J. *(after stating the facts)*. Counsel for appellants cite and rely upon the following cases: *Koch* v. *Koch,* 126 Mich. 187; *Carr* v. *Lyle,* 126 Mich. 655; *Thompson* v. *Tucker-Osborn,* 111 Mich. 470; *Hockenberry* v. *Donovan,* 170 Mich. 370; *Bechtel* v. *Barton,* 147 Mich. 318; *Emery* v. *Emery,* 181 Mich. 146. These cases, with the exception of *Emery* v. *Emery* and *Bechtel* v. *Barton,* deal with antenuptial contracts instead of postnuptial settlements and may therefore be disregarded except so far as the reason employed in their determination may be applicable to the case at bar.

In the *Emery Case,* Mr. Justice STONE, in discussing a postnuptial settlement, said:

"Such an agreement seems to have been fair and free from collusion. This court has consistently held that after actual separation, or the launching of a bill for divorce, amicable settlements between the parties of their property interests are not only lawful, but are to be commended. *Randall* v. *Randall,* 37 Mich. 563; *Palmer* v. *Fagerlin,* 163 Mich. 345, 349; *Nichols* v. *Nichols,* 169 Mich. 540, 542."

It is true, as pointed out by counsel for defendant, that this court there had under consideration the effect of a contract upon the parties themselves. But the language used indicates that when such contracts

are fair and untainted by fraud, they are to be favored and enforced.

The contract under consideration in the case of *Bechtel* v. *Barton, supra,* very much resembled the agreement between the parties in this case. In consideration of the agreed payments to be made the wife surrendered "all claim to and right for dower, support and of all claims of every name, nature and description." The husband there died testate and the wife sought to obtain her widow's share of the testator's estate. It was held that the contract, being fully executed and followed by a separation, prevented the wife from enforcing any claim against the husband's estate as his widow. The opinion (written by Mr. Justice OSTRANDER) is interesting in that the cases are therein discussed and distinguished. He said:

"We are not called upon to determine whether, if the estate was intestate, the same ruling should be made."

Here the estate is intestate, and we must determine whether the rule announced in the *Bechtel-Barton Case* is applicable. An examination of the language of the contract itself is illuminative. In consideration of the sums to be paid to the wife she released her husband from all obligations for her support and maintenance "and does hereby release all dower rights which she now has, or may hereafter have in any property of the said Joseph O. Jeannot, *and each of said parties do hereby release any claims which they have, or may hereafter have, in or to the property of the other.*"

It is the contention of counsel for defendant and appellee that a fair construction of the language used in this contract fails to indicate a purpose to surrender a right of inheritance in case of the death of either party intestate, and many cases are cited from foreign jurisdictions to the effect that such intention must be clearly expressed in the settlement. Among the cases so cited are the following: *Stewart* v. *Stewart,* 7

Johns. Ch. (N. Y.) 229; *Collins* v. *Phillips*, 259 Ill. 405 (102 N. E. 796, Ann. Cas. 1914C, 188) ; *Dunlop* v. *Lamb*, 182 Ill. 319 (55 N. E. 354) ; *Newton* v. *Truesdale*, 69 N. H. 634 (45 Atl. 646) ; *Glass* v. *Davis*, 118 Ind. 593 (21 N. E. 319). We have no doubt that the cases cited fairly support the proposition advanced; but in our opinion a fair reading of the contract indicates that the parties dealt not alone with reference to the property owned by each in his or her lifetime, but to that same property after death. The wife barred her right of dower, which could only be apportioned after her husband's death; and the husband released any claim which he might hereafter have in or to the property of the wife. It cannot be contended, of course, that the estate of Florence Jeannot was not her property, indeed the very property with reference to which the contract was made, and that the husband is now—"hereafter"—making a claim to said property in spite of his contract not to do so.

We are of the opinion that the fact that the wife in the case at bar died intestate should not be held to warrant a determination different from that indulged in in the *Bechtel-Barton Case*. This contract was entered into in good faith by the parties and thereafter they did not live together. It was fully executed, and, we think, should be fully carried out by the surviving spouse according to its tenor.

The judgment of the court below will be reversed and one entered here in accordance with this opinion.

Moore, C. J., and Steere, Fellows, Stone, Clark, Bird, and Sharpe, JJ., concurred.