### *In re* BERNER'S ESTATE.

1. EXECUTORS AND ADMINISTRATORS — WIDOW'S RIGHT TO PREFERENCE AS ADMINISTRATRIX—STATUTES.

> 3 Comp. Laws 1915, § 13820, places the widow first and then next of kin in order of persons entitled to administration, and such priority extends to those who may request the appointment of some other person; the object of the statute being the best interests of the estate.

2. SAME—WIDOW'S RIGHT TO PREFERENCE DEFEATED BY PRIOR VALID PROPERTY SETTLEMENT.

> A widow who at the time of her husband's death was living apart from him, and who had entered into a property settlement agreement with him contemplating a complete, final, and absolute financial settlement, so that she had no beneficial interest as distributee, is not entitled to preference as administratrix of her husband's estate under said statute; her right, if any, to statutory allowances pertaining to administration being insufficient to entitle her to preference.

3. SAME—WIDOW'S RIGHT TO STATUTORY ALLOWANCES FOR ADMINISTRATION.

> As to whether the widow, because of said settlement agreement, is without right to said statutory allowances,—*quære.*

4. SAME—WIDOW'S FITNESS—BURDEN OF PROOF.

> They who assert that a widow is unsuitable for appointment as administratrix have the burden of proof.

5. HUSBAND AND WIFE—SEPARATION AGREEMENT—VALIDITY—PUBLIC POLICY.

> While an agreement between husband and wife to effectuate a separation or in contemplation of a future separation is void as against public policy, an agreement in recognition of an existing separation is valid.

6. SAME—INTENTION—QUESTION OF FACT.

> Separation involves a cessation of domestic intercourse and cohabitation, and is to be found as a fact from the intention and conduct of the parties.

7. EXECUTORS AND ADMINISTRATORS — SEPARATION AGREEMENT — WIDOW NOT ENTITLED TO PREFERENCE.

The agreement in question *held*, presumptively valid, and the proof respecting it and a division of the property according to its terms sustain the judgment of the court below that the widow was not entitled to preference as administratrix under the statute.

8. HUSBAND AND WIFE—SEPARATION AGREEMENT—FRAUD—EQUITY.

The equity court is open to set aside a separation agreement if invalid for fraud or other reason.

Certiorari to Calhoun; North (Walter H.), J. Submitted February 7, 1922. (Docket No. 130.) Decided March 30, 1922.

Rose Berner appealed from an order of the probate court of Calhoun county appointing Willard A. Knight administrator of the estate of Carl F. T. Berner, deceased. From a decree affirming the order of the probate court, appellant brings certiorari. Affirmed.

*William E. Ware* (*James M. Powers*, of counsel), for appellant.

*W. A. Knight* and *O. S. Clark*, for appellees.

CLARK, J. Differences arose between Carl F. T. Berner and Rose Berner, his wife, resulting in separation and property settlement. This was followed by the filing of a bill for divorce. Then the husband died intestate. There were no children. His sister, next of kin, filed a petition for the appointment of Willard A. Knight as administrator. The widow petitioned for the appointment of Edward B. Zimmer and objected to the appointment of Knight. The probate judge found that both Knight and Zimmer were suitable persons, but he appointed Knight on the ground that the widow "had parted with all her interest in said estate when

she petitioned as aforesaid and was not beneficially interested in said estate."

An appeal was taken to the circuit court, where the decree of the probate court was affirmed not only for the reason suggested above but because the widow "along with her other rights in his property had parted with what would have been her statutory right to act as administratrix herself or nominate some other competent and suitable person to do so."

In pursuance of the settlement agreement Berner and wife divided their property and conveyed certain lands owned by them jointly to a third person who then conveyed to them separately as the agreement provided. The agreement contemplated a complete, final and absolute financial settlement. It was made in usual form, executed by the parties and witnessed by their respective counsel. We quote a paragraph:

"And the said second party in consideration of the execution of this mutual agreement and of the property set apart to her on the terms hereof receives the same in full and complete settlement and release of all claims and demands of every kind, name or nature against the said first party including all liability now or at any time hereafter existing or accruing either on account of support, maintenance, alimony, temporary or permanent, dower, thirds or allowances, either statutory or arising at common law incident to the marriage relation intending hereby to relieve the said first party entirely from all personal claims and demands and from any that may hereafter attach, arising in any manner from the relation of husband and wife and from any and all costs, charges and expenses as well as alimony, either temporary or permanent, incident to any divorce suit now pending or that may hereafter be commenced by either of the said parties hereto against the other and as a part of the consideration hereof, the said second party hereby releases said first party from all claim, homestead rights or any interest whatever in any property, real or personal, which the said first party may now own or may be set off to him in the terms of this agree-

ment or that he may at any time hereafter hold or acquire any interest whatsoever in, either through devise, bequest, purchase or otherwise, it being understood that this settlement is a total and complete release of the said Carl F. T. Berner, first party, by Rose Berner, his wife, second party, of all matters and charges whatsoever and that the said second party, Rose Berner, shall after this settlement require nothing whatever of the said Carl F. T. Berner, as though the marriage relation had never existed between them."

The widow has brought the cause here on certiorari for review.

The statute, section 13820, 3 Comp. Laws 1915, places the widow first, then next of kin, in order of persons entitled to administration. And such right of priority extends to those who may request the appointment of some other person. *In re Morgan's Estate*, 209 Mich. 65. The object of the statute is the interest of the estate, hence, the placing of administration in the hands of a distributee, a person most likely to convert the property to the best advantage of those beneficially interested. The principle is well stated in *Johnson* v. *Johnson*, 15 R. I. 109 (23 Atl. 106):

"It is, therefore, an established principle governing courts exercising probate jurisdiction, that the right to the administration of the effects of an intestate follows the property in them. *In re Goods of Gill*, 1 Hagg. Ecc. 341, 342; *Wetdrill* v. *Wright*, 2 Phillimore, 243, 248; *Ellmaker's Estate*, 4 Watts (Pa.), 34, 38; *Sweezey* v. *Willis*, 1 Bradf. Surrog. (N. Y.) 495-497; *Hall* v. *Thayer*, 105 Mass. 219, 224 (7 Am. Rep. 513); *Thornton* v. *Winston*, 4 Leigh (Va.), 163, 170, 174; *Clay* v. *Jackson*, T. U. P. Charlt. (Ga.) 71, 73; *Leverett* v. *Dismukes*, 10 Ga. 98, 99. In 1 Williams on Executors, 436, the author remarks that, both in the common law and spiritual courts, it has always been considered that the object of the statutes of administration, 31 Edw. 3, cap. 11, and 21 Henry 8, cap. 5, is to give

the management of the property to the person who
has the beneficial interest in it; and the inclination
to effectuate this object had been so strong that in
some instances not only the practice of the ecclesiasti-
cal court, but the decisions of the judges delegate,
have not scrupled to disregard the express words of
the statute; and he cites the cases of *Bridges* v. *The
Duke of Newcastle,* cited by the court in *West & Smith*
v. *Willby,* 3 Phillimore, 381, and *Young* v. *Peirce,*
Freeman, 496. In the former, Lord Hollis had died
intestate, and Bridges claimed administration as next
of kin. The effects were vested by act of parliament
in the Duke of Newcastle to pay the debts of the de-
ceased. The judge of the prerogative court, and
afterwards the delegates, held that the next of kin
was excluded on the ground that he had no interest,
and granted administration to the Duke of Newcastle.
In the latter, administration was refused by the pre-
rogative and the delegates to a next of kin on the
ground that she had released her interest, and the
letters were granted to the party beneficially entitled
to the personal estate."

A statute of California gave preference as to ap-
pointment somewhat similar to ours but made the
right of a widow and other relatives to administer to
depend upon the question of their right to "succeed
to the personal estate or some portion thereof." Of
this provision, it was said (*In re Davis,* 106 Cal. 453
[39 Pac. 756]):

"The principle involved in this provision of the
statute, restricting the right of administration to those
relatives entitled to take the personal estate, is not
new. It is but the expression of a policy which will
be found to control in the statutes of many, if not most,
of the States upon the subject, and is well recognized
in England. It has its foundation in the considera-
tion that administration should be committed to those
who are the ultimate residuary beneficiaries of the
estate—those to whom the property will go after ad-
ministration. Its reason is well stated in 1 Woerner's
American Law of Administration, § 235, where it is
said:

" 'It is obvious that those who will reap the benefit of a wise, speedy, and economical administration, or, on the other hand, suffer the consequences of waste, improvidence, or mismanagement, have the highest interest and most influential motive to administer properly.'

"And this principle is held to apply to the case of a husband and wife, when, for any reason, not entitled to inherit equally with any other relative (1 Woerner's American Law of Administration, §§ 235-237; *Randall* v. *Shrader*, 17 Ala. 333; *Maurer* v. *Naill*, 5 Md. 324; *Ward* v. *Thompson*, 6 Gill & J. [Md.] 349)."

Upon the subject of the right of the widow and next of kin to appointment under the statutes, it is said in 1 Williams on Executors, p. 495:

"But the court has always held that administration may be granted to the next of kin, and the widow be set aside upon good cause; for instance, if she has barred herself of all interest in her husband's personal estate by her marriage settlement."

Without adopting the rules announced and merely to show the trend of authority respecting this question, we call attention to the following:   A widow has been denied appointment when she has left her husband and renounced all conjugal intercourse for a considerable time before his death. *Odiorne's Appeal*, 54 Pa. St. 175 (93 Am. Dec. 683).   She was not a party aggrieved and entitled to appeal when she had voluntarily entered into a valid agreement for separation.   *In re Noah*, 88 Cal. 468 (26 Pac. 361).   Nor was she entitled to statutory family allowance.   *In re Noah*, 73 Cal. 583 (15 Pac. 287; 2 Am. St. Rep. 829). And rights as widow have been cut off by elopement with another man.   *Prater* v. *Prater*, 87 Tenn. 78 (9 S. W. 361, 10 Am. St. Rep. 623) ; and by other gross misconduct.   *Arthur* v. *Israel*, 15 Colo. 147 (25 Pac. 81, 10 L. R. A. 693, 22 Am. St. Rep. 381) ; and see cases cited in Williams on Executors, *supra.*   See 1

Chatterton's Probate Law, p. 241, and 1 Woerner on Administration (2d Ed.), p. 549.

And the following, *In re Sprague's Estate*, 125 Mich. 357, is persuasive even if *dictum* as claimed by counsel:

"The evident purpose of this statute is to place the administration in the hands of some one beneficially interested. If the widow has assigned and sold all interest in her husband's estate prior to the petition for the appointment of an administrator, she would not be entitled, as a matter of law, to such appointment. The statute means the widow who has an interest in the estate of the deceased, and not the widow who has parted with her entire interest."

See, also, *White* v. *Spaulding*, 50 Mich. 22; *Haug* v. *Primeau*, 98 Mich. 91; and *Breen* v. *Pangborn*, 51 Mich. 29.

It was held, *In re Davis, supra* (quoting from syllabus):

"A surviving wife, who, at the time of the death of her husband, was living apart from him in pursuance of written articles of separation, whereby they agreed to divide their property, relinquish all claims of every nature upon the property of each other then owned or thereafter to be acquired, is not entitled to succeed to any portion of his estate, and consequently neither she nor her nominee is entitled to letters of administration thereon."

See *Liginger* v. *Field*, 78 Wis. 367 (47 N. W. 613).

But counsel urge that in any event the separation agreement does not include statutory allowances pertaining to administration, citing cases where such allowances were made in will cases: *Miller* v. *Stepper*, 32 Mich. 194; *Moore* v. *Moore*, 48 Mich. 271; *Pulling* v. *Wayne Probate Judge*, 88 Mich. 387; and in case of an antenuptial agreement, *Pulling* v. *Wayne Probate Judge*, 85 Mich. 34; and in case of a postnuptial agreement, *Bliss* v. *Livingston Probate Judge*, 149 Mich. 271; and that to that extent at least the widow

is beneficially interested, and hence entitled to appointment.

If the widow has disposed of her interest in the estate to the extent that nothing remains to her but some statutory allowances pertaining to administration and to the extent that she can have no beneficial interest as distributee, after payment of creditors and the expenses of administration, then in principle and within the purpose of the statute she is not entitled to preference respecting appointment.

Having this view, we need not consider whether because of the agreement the widow is without right to the statutory allowances though on that question careful comparison of the language of the agreement here with that of the writings in *Pulling* v. *Wayne Probate Judge, supra,* and of *Bliss* v. *Livingston Probate Judge, supra,* is suggested and an examination of the following cases may be instructive: *Tiernan* v. *Binns,* 92 Pa. St. 248; and see *Cowdrey* v. *Hitchcock,* 103 Ill. 262; *Mack* v. *Heiss,* 90 Mo. 578 (3 S. W. 80); *In re Noah, supra.*

They who assert that a widow is unsuitable for appointment have the burden of proof. In some jurisdictions it is held "that separation agreements are not presumptively valid and that if such an agreement is relied upon either as a cause of action or as a matter of defense both the pleading and the proof must affirmatively show that the contract is free from fraud, unfairness, coercion, or mistake," while in other jurisdictions such agreements "are presumptively valid so that a party pleading such an agreement need not aver or prove that its execution was free from coercion, fraud or mistake, or that it was not unfair and consequently that the burden as to such matters is upon the party seeking to take advantage thereof." 5 A. L. R. 824.

It was said in *Palmer* v. *Fagerlin,* 163 Mich. 345:

"This court has consistently held that, after actual separation or the launching of a bill for divorce, amicable settlements between the parties, of their property interests, are not only lawful but are to be commended. *Randall* v. *Randall*, 37 Mich. 563; *Owen* v. *Yale*, 75 Mich. 256."

See, also, *Schmoltz* v. *Schmoltz*, 116 Mich. 692; *Emery* v. *Emery*, 181 Mich. 146; *Metcalf* v. *Tiffany*, 106 Mich. 504; *Nichols* v. *Nichols*, 169 Mich. 540; *Bechtel* v. *Barton*, 147 Mich. 318. Surely this court would not commend the making of contracts presumptively invalid.

As to whether such agreements are presumptively valid or presumptively invalid, an able opinion in which the subject is fully considered and the authorities are reviewed is *Daniels* v. *Benedict*, 38 C. C. A. 592, 608, 97 Fed. 367, from which we quote briefly:

"It will not do to say that all contracts between husbands and wives, between fathers and daughters, between principals and agents, and between others in similar relations, are ineffectual until proved *aliunde* to be just and fair, because the effect of such a rule would be to practically disable parties occupying such relations from making contracts with each other. Agreements between parties in these relations are either presumptively valid or presumptively void. If the former, then the power of such parties to bargain, trade, and agree with each other is plenary. If the latter, then their power to contract with each other is practically destroyed. No principle of equity, no rule of law or of morals, which occurs to us, requires a decision that the confidential and fiduciary relations of life disable all who enter them from making agreements with each other, or stamp their mutual contracts with the presumption of fraud or invalidity."

And see 1 Schouler on Marriage & Divorce (6th Ed.), pp. 1287, 1288.

An agreement to effectuate a separation or in contemplation of a future separation is void as against public policy. An agreement disclosing such fact

on its face, or disclosing on its face that it is unjust or inequitable is not presumptively valid. The agreement should be in recognition of an existing separation. Separation involves a cessation of domestic intercourse and cohabitation. 21 Cyc. p. 1592; 1 Schouler on Marriage & Divorce (6th Ed.), p. 1285. It is to be found as a fact from the intention and conduct of the parties.

The separation agreement here was presumptively valid and the proof respecting it and a division of the property according to its terms sustains the said finding of the probate court and the decree appealed from. The equity court is open to those who would set such agreement aside as being invalid for fraud or other reason.

No other question merits discussion.

Judgment affirmed.

FELLOWS, C. J., and WIEST, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.