LAPPO v. NEGUS.

1. HUSBAND AND WIFE—TENANCY BY ENTIRETIES—MORTGAGE—SURVIVORSHIP.

The right of survivorship continues as to the debt or mortgage resulting from the sale of property held by a husband and wife as tenants by the entireties unless there is an express statement to the contrary (CL 1948, § 557.81).

2. SAME—TENANCY BY ENTIRETIES—MORTGAGES—DIVISION OF PAYMENTS—SURVIVORSHIP.

An agreement to divide payments due under purchase-money mortgage of property husband and wife had owned as tenants by the entireties, whereby the husband and wife, now living separately but not divorced, were each to have 1/2 of the monthly payments from the mortgagors, but which does not suggest that it was a property settlement, which makes no reference to any change in the nature of the ownership of the mortgage or promissory note nor employ any words of conveyance and was to continue until further notice *held*, not to have divested defendant wife of her right of survivorship which had attached as an incident of the tenancy by entireties (CL 1948, § 557.81).

3. SAME—SEPARATION—TENANCY BY ENTIRETIES—CONSTRUCTION OF AGREEMENT TO DIVIDE MORTGAGE PAYMENTS.

The prior separation of a husband and wife does not change the meaning of any subsequent written agreement between them

REFERENCES FOR POINTS IN HEADNOTES

[1] 26 Am Jur, Husband and Wife § 77.
Estates by entirety in personal property. 64 ALR2d 8.
Character of interests of husband and wife in purchase-money mortgage on sale of estate by entireties. 30 ALR 905.
[2] 26 Am Jur, Husband and Wife § 82.
[3] 26 Am Jur, Husband and Wife § 81.
[4] 54 Am Jur, Trusts § 225.
[5] 26 Am Jur, Husband and Wife § 95.
[6] 27 Am Jur, Husband and Wife § 637.

relative to division of payments on mortgage taken on sale of property they had held as tenants by the entireties from that conveyed by the wording of the agreement (CL 1948, § 557.81).

4. TRUSTS—CONSTRUCTIVE TRUST.

A constructive trust is raised by a court of equity wherever a person, clothed with a fiduciary character, gains some personal advantage by availing himself of his situation as trustee.

5. SAME—CONSTRUCTIVE TRUSTS—HUSBAND AND WIFE—DESERTION —DIVISION OF MORTGAGE PAYMENTS.

Defendant wife who had taken most of the available cash as she deserted her husband during his last illness *held,* not to have created a situation whereby she should be declared a constructive trustee as to mortgage payments for the benefit of the husband's estate by reason of written agreement by which they had agreed to have the mortgagors make equal monthly payments to them under mortgage which had been given the husband and wife when they sold their entireties property (CL 1948, § 557.81).

6. COSTS—RECORD—HUSBAND AND WIFE—MORTGAGES.

No costs are allowed appellant wife, successful in obtaining entire balance of mortgage, under record presented in suit to determine who should receive payments from mortgagors who had purchased property from appellant and her late husband which they had held as tenants by the entireties (CL 1948, § 557.81).

Appeal from Muskegon; Fox (Noel P.), J. Submitted October 12, 1960. (Docket No. 68, Calendar No. 48,711.) Decided January 9, 1961.

Bill by Edward Lappo and Margaret Lappo against Bessie Negus, widow of William I. Negus, and Bernice E. Herreman, executrix of the estate of William I. Negus, for declaratory judgment to determine proper party to receive mortgage payments. Decree declaring each defendant entitled to receive 1/2. Defendant Negus appeals. Reversed for entry of decree granting widow full right to payments.

*Albert H. Callahan,* for defendant Negus.

*Scholten & Fant,* for defendant Herreman, executrix.

EDWARDS, J.  In this suit the purchasers of a piece of property at 3240 Getty street in Muskegon seek a declaratory judgment* to determine to whom to make the balance of their mortgage payments.  The question posed is whether or not the mortgage was owned jointly by a husband and wife with the right of survivorship, or whether an agreement made between the husband and wife prior to the husband's death had changed the ownership to a tenancy in common.  The circuit judge, viewing the agreement as ambiguous, took much testimony as to the relationship between the parties and found that the agreement created a tenancy in common.  He entered a decree giving 1/2 of the proceeds of the mortgage to the estate of the now-deceased husband.  The wife, claiming the agreement in no way altered her survivorship rights, appeals.

Prior to hearing defendant Bessie Negus had made a motion for a decree in her favor based on the pleadings.  In denying the motion, the circuit judge described the pleaded facts and the issue:

"In this case plaintiffs are purchasers of real estate described in the bill of complaint from William I. Negus and Bessie Negus who were husband and wife.  On September 9, 1953 the Neguses conveyed to plaintiffs by warranty deed the property so described and at the same time plaintiffs gave a mortgage to the Neguses as security for the payment of a promissory note in the sum of $30,000.

---

* See CL 1948, §§ 691.501–691.507 (Stat Ann §§ 27.501–27.507).—
REPORTER.

"Thereafter, William I. Negus and Bessie Negus entered into an agreement, allegedly on the first day of June, 1956, the interpretation of which is the subject of this case.

"On the first day of July, 1956, William I. Negus died in the State of Florida.

"Defendant Bernice E. Herreman, executrix of the estate of William I. Negus, claims the deceased and defendant Bessie Negus separated on the 16th day of May, 1956. It is undisputed that on that day Bessie Negus withdrew the sum of $1,102.89, which had been on deposit in the Melbourne and Trust Company in the joint names of the Neguses and left a balance of $102. Defendant Bernice E. Herreman claims this withdrawal was made incident to a separation by the Neguses. She also claims the Neguses by the agreement intended to divide the total payment evidenced by the promissory note. Bernice E. Herreman further claims this agreement was prepared in Michigan and signed by Bessie Negus, and thereafter sent to William I. Negus in the State of Florida where he signed it. * * *

"Bessie Negus denies marital difficulties caused a separation of the parties. She alleges the agreement was executed to facilitate monthly payments; 1/2 to William Negus, her deceased husband, and 1/2 to herself while she was residing in Michigan and he was residing in Florida.

"At the pretrial, counsel for defendant Bessie Negus moved for the entry of a decretal determination that as surviving widow she is entitled to the balance of the proceeds due on the promissory note and mortgage obligation since the agreement was only for the division of monthly payments and not a severance of the tenancy by entireties in the mortgage.

"This motion was resisted by Howard W. Fant, attorney for executrix Bernice E. Herreman, who requested permission to take depositions in Florida in support of the contention that the agreement was in fact a separation contract by which the balance

due on the promissory note was to be divided equally between the Neguses. He asks the court for a trial and a decree ordering 1/2 of the purchase price evidenced by the promissory note, due from and after the death of William Negus to be paid to his estate.

"Thus, the issue is drawn in this case.

"Since the agreement states in part, 'Whereas the said William I. Negus and Bessie Negus are agreed that the payments now due and to become due on the mortgage note of Edward Lappo and Margaret M. Lappo, his wife, should be equally divided between them,' it is subject to further construction; therefore the court denies Bessie Negus' motion and orders the parties to prepare for trial."

The property sold by the Neguses to the Lappos in 1953 had previously been deeded to "William I. Negus and Bessie Negus, husband and wife, as tenants by the entireties." Michigan law provides when property so held is sold, unless there is an express statement to the contrary, that the right of survivorship shall continue as to the debt or mortgage resulting:

"In all cases where a husband and wife shall sell land held as a tenancy by the entirety and accept in part payment for the purchase price the note or other obligation of said purchaser payable to said husband and wife, secured by a mortgage on said land payable to husband and wife, the said debt together with all interest thereon, unless otherwise expressly stated in said mortgage, after the death of either shall be payable to the survivor, and the title to said mortgage shall vest in the survivor." CL 1948, § 557.81 (Stat Ann 1957 Rev § 26.191).

Further, the mortgage given by the Lappos was made payable to "William I. Negus and Bessie Negus, husband and wife," and the promissory note was made payable to both. Still another statute provides for rights of survivorship in relation to such

a mortgage or debt unless there is express contrary indication:

"All bonds, certificates of stock, mortgages, promissory notes, debentures, or other evidences of indebtedness hereafter made payable to persons who are husband and wife, or made payable to them as indorsees or assignees, or otherwise, shall be held by such husband and wife in joint tenancy unless otherwise therein expressly provided, in the same manner and subject to the same restrictions, consequences and conditions as are incident to the ownership of real estate held jointly by husband and wife under the laws of this State, with full right of ownership by survivorship in case of the death of either." CL 1948, § 557.151 (Stat Ann 1957 Rev § 26.211).

Thus, as of the time of the execution of the June 1, 1956, agreement, there is no question but that the Neguses owned the mortgage and the promissory note jointly with full rights of survivorship.

The agreement of June 1, 1956, was attached to plaintiffs' bill of complaint and its execution was admitted by the pleadings. The specific question to be determined by this appeal is whether or not the agreement which follows was, as the circuit judge held, ambiguous and subject to a construction which would terminate survivorship rights:

"AGREEMENT FOR DIVISION OF MORTGAGE PAYMENTS

"Agreement made this 1st day of June, A.D., 1956, by and between
"William I. Negus and Bessie Negus, his wife, witnesseth:

"Whereas the parties above named are the holders of a promissory note dated September 10, 1953, in the amount of $30,000, executed by Edward Lappo and Margaret M. Lappo, his wife, and secured by a first real-estate mortgage on property located at 3240 Getty street, Muskegon, Michigan, on which note there is now due approximately $20,000, payable in monthly installments of $300 each, including interest, and

"Whereas William I. Negus presently resides in the State of Florida, the mailing address being Box 218, Route No. 2, Melbourne, Florida, in care of the Brownie Trailer Court; and Bessie Negus presently resides at 3300 Elizabeth Lake road, Pontiac, Michigan, in care of Mrs. Bell Scott, and

"Whereas the said William I. Negus and Bessie Negus are agreed that the payments now due, and to become due, on the mortgage note of Edward Lappo and Margaret M. Lappo, his wife, should be divided equally between them,

"Now, therefore, it is hereby agreed between the parties hereto, that from and after the date hereof all payments receivable from Edward Lappo and Margaret M. Lappo, his wife, on the promissory note above mentioned should be equally divided, and 1/2 thereof, or $150 monthly, shall be sent to William I. Negus, c/o Brownie Trailer Court, Box 218, R No. 2, Melbourne, Florida, and that $150 per month be paid direct to Bessie Negus, c/o Mrs. Bell Scott, 3300 Elizabeth Lake road, Pontiac, Michigan.

"By these presents, the said Edward Lappo and Margaret M. Lappo, his wife, are hereby authorized and directed to divide said monthly payments in the manner herein specified, and to send 1/2 thereof to William I. Negus and 1/2 thereof to said Bessie Negus, and that this arrangement and division of payments shall continue until further notice in writing from the said William I. Negus and Bessie Negus, his wife, to the said Edward Lappo and Margaret M. Lappo, his wife.

"In witness whereof the parties hereto have hereunto set their hands and seals to this instrument the day and year first above written.

"WILLIAM I. NEGUS

"BESSIE NEGUS

"Signed, sealed and delivered

in the presence of

"JANET EDWARDS

"BERNICE E. HERREMAN

"HAROLD W. DUDLEY

"GLADYS HARMER"

We note that the agreement was entitled "Agreement for Division of Mortgage Payments." The parties are listed as "William I. Negus and Bessie Negus, his wife." It recited that William Negus "presently resides in the State of Florida," and Bessie Negus "presently resides at 3300 Elizabeth Lake road, Pontiac, Michigan" and provided for all payments due from the Lappos to "be equally divided" and $150 monthly to be sent to William Negus in Florida, and $150 monthly to be sent to Bessie Negus in Michigan.

The last paragraph of the agreement authorized the Lappos to make the division of the payments, and provided for the arrangement to continue "until further notice in writing."

None of the language of the agreement suggests that it could be read as a general property settlement between the parties. It makes no reference to any change in the nature of the ownership of the mortgage or promissory note. Nor does it employ any words of conveyance. *Cf.* CL 1948, § 557.101 (Stat Ann 1957 Rev § 26.201). Further, the language providing for continuation "until further notice" is completely at odds with interpreting this agreement as a conveyance.

We conclude that the agreement was entered into for the convenience of the parties after their separation, and that it represented a revocable authority given the Lappos to pay 1/2 of each payment due to each of the 2 Neguses separately.

We do not ignore or condone the conduct of Mrs. Negus. For purposes of our decision on this appeal we accept the contentions of the executrix as set forth in her answer. Essentially, these contentions were that Mrs. Negus deserted her husband in his last illness, taking with her most of the cash available to the parties, and that such desertion and separation preceded the June 1, 1956, agreement.

On this point, appellee executrix cites 7 Michigan cases* which we have read with interest but which we view as totally unrelated to our problem. In general, they deal with property settlement agreements and hold that such agreements between husbands and wives may be valid if entered into under such circumstances as not to induce the separation, and provided that they are found to be fair.

Nothing in any of those cases suggests that the prior separation of the parties changes the meaning of any subsequent agreement from that conveyed by its wording.

Nor do we believe that any constructive trust in favor of the executrix may be deduced from this record. In *Stephenson* v. *Golden,* 279 Mich 710, this Court adopted Lewin's definition (p 738):

" 'A constructive trust is raised by a court of equity wherever a person, clothed with a fiduciary character, gains some personal advantage by availing himself of his situation as trustee; for as it is impossible that a trustee should be allowed to make a profit by his office, it follows that so soon as the advantage in question is shown to have been acquired through the medium of a trust, the trustee, however good a legal title he may have, will be decreed in equity to hold for the benefit of his *cestui que trust.'* Lewin on Trusts (13th ed), p 191."

Bessie Negus's rights in this mortgage vested in 1953—long before the conduct which so dramatically violated her marriage vows. She did not improve her legal or financial rights in respect to the mortgage or promissory note by the execution of the June 1, 1956, agreement. Nor has she actually received (although the hearing record indicates she sought

---

* *Randall* v. *Randall,* 37 Mich 563; *Palmer* v. *Fagerlin,* 163 Mich 345; *Nichols* v. *Nichols,* 169 Mich 540; *Bechtel* v. *Barton,* 147 Mich 318; *Emery* v. *Emery,* 181 Mich 146; *In re Jeannot's Estate,* 212 Mich 442; *In re Berner's Estate,* 217 Mich 612.

to) anything more from the Lappo transaction than she was legally entitled to long before the conduct complained of. All of these facts distinguish this case completely from the constructive trust dealt with by the Court in *Bruso* v. *Pinquet,* 321 Mich 630.

Neither on the pleadings nor the proofs did plaintiffs establish a basis for equity to set aside defendant Bessie Negus's vested right of survivorship.

Reversed for entry of a decree in favor of defendant Negus. On this record, we award no costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.