RANSFORD v. YENS.

Husband and Wife—Postnuptial Property Settlement Agree-
ment—Widow's Allowance—Equally Divided Court.
  Judgment determining postnuptial property settlement agree-
  ment valid and barring widow from allowance and inheritance
  from the estate of her late husband is affirmed by an equally
  divided court.

Appeal from Tuscola; Quinn (Timothy C.), J.
Submitted June 3, 1964. (Calendar No. 20, Docket
No. 50,720.) Decided January 4, 1965.

Petition by M. C. Ransford, administrator of the
estate of Henry Yens, deceased, against Mollie Yens
for disallowance of her request for widow's allow-
ance. Judgment for plaintiff determining a post-
nuptial property settlement agreement valid barring
widow from allowance and inheritance from the es-
tate. Defendant appeals. Affirmed by an equally
divided court.

*Maurice C. Ransford, in propria persona,* for
plaintiff estate.

*Thomas R. McAllister,* for defendant.

Kelly, J. (*for affirmance*). The question pre-
sented in this appeal is whether a May 7, 1953, agree-

REFERENCES FOR POINTS IN HEADNOTE
26 Am Jur, Husband and Wife § 318.
  Validity of postnuptial agreement releasing or waiving rights of
  surviving spouse on death of other spouse. 49 ALR 116.

ment between decedent, Henry Yens, and Mollie Yens, his wife, is void as against public policy.

This agreement first sets forth the fact that the parties were married in April, 1950, at which time he was of the age of 66 years and she of the age of 59 years and "each of the parties had children by a former marriage and also had property."

The agreement then sets forth the fact that since their marriage they had acquired five acres of land which they subsequently sold on land contract and because "a dispute has arisen between said parties as to the property rights existing between them relative to the aforesaid property and all other property owned by either or both and in settlement of said dispute the parties have entered into this agreement for the purpose of finally determining the rights of each as to all of their property and the obligations of each toward the other."

There follows the five paragraphs of the agreement:

"1. The said parties agree to continue to live together as husband and wife and the first party assumes his obligation to support the second party so long as said parties continue to live together and do not separate.

"2. The first party agrees to pay unto the second party the sum of $4,000 on or before June 1, 1953. In consideration for said payment and also the receipt of $600 previously made by the first party to the second party, the second party does hereby forever release and discharge all of her right, title and interest in any property owned by the first party, or which the second party may hereafter acquire by reason of said marriage and any dower interest, or any other interest that the second party has, or will hereafter have by reason of said marriage. It is also understood and agreed that said payment is in full settlement of all interest that the second party

now has in the real estate and land contract described aforesaid.

"3. It is further agreed that in the event the second party is required to secure hospital and medical treatment for any illness from and after this date that the expense of such hospitalization shall be paid by the second party from her own funds. It is also agreed that in the event the second party shall predecease the first party, then the funeral expenses of the second party shall be paid from the funds and the estate of the second party and first party shall not be liable for the payment of same.

"4. In the event that it subsequently develops that said parties cannot continue to live together as husband and wife and a separation is desired or effected, then each of the parties shall be obligated to support themselves. In the event that a divorce proceedings shall be commenced, then the second party shall not be entitled to any interest in the real or personal property of the first party, nor shall the first party be entitled to any interest in the property of the second party, and first party shall not be obligated to pay alimony or attorney fees for the second party.

"5. It is further covenanted and agreed that all of the property, real and personal, of which the party of the first part may die seized or possessed, shall pass to and descend to his children, or as he may direct by will, without right or claim made by the second party hereto as surviving wife; and that all of the real and personal property of which the second party may die seized, or possessed, shall pass to and descend to her children, or as she may direct by will, without any right or claim made by the party of the first part thereto as surviving husband."

Henry Yens paid his wife Mollie the $4,600 provided for in the agreement and she quitclaimed her interest in the five acres of property to him. They continued to live together as husband and wife for

almost nine years, separating eight months before his death in October, 1962.

Deceased's estate consisted of his vendor's interest in the above-mentioned land contract, which was $5,950.87, plus shares of stock appraised at $230.

Appellant's request for widow's allowance from deceased's estate was answered by the administrator claiming that her rights had been eliminated by the above-mentioned agreement.

The Tuscola county probate court determined that the agreement, having been made when the parties were not separated and not contemplating separation, was void as against public policy and held that Mollie Yens was entitled to a widow's allowance and all her rights as said widow as provided by law.

In reversing the probate court and holding the agreement valid and not void as against public policy, Circuit Judge Timothy C. Quinn, in a written opinion, stated:

"In interpreting this contract, accepted rules of construction must be borne in mind, viz:

"1. 'Every deed or contract in writing is supposed to express the intention of the parties executing it, and when the object or purpose of such deed or contract is called in question in a court of justice, the first inquiry is, what is the intention of the parties, as expressed in the written instrument?' *Bassett* v. *Budlong,* 77 Mich 338 (18 Am St Rep 404).

"2. 'Intention of parties in making contract should be ascertained by construing it in the light of circumstances existing at the time it was made and manifest intent must prevail over the literal sense of terms.' *Klever* v. *Klever,* 333 Mich 179, 186.

"3. 'The agreement must be construed, if possible, in such manner as to carry out the intent of the parties.' *Loyal Order of Moose* v. *Faulhaber,* 327 Mich 244, 250.

"The circumstances existing at the time of and giving rise to this agreement are clearly set forth

in the 'whereas' clauses of the agreement. From these circumstances and paragraphs 1 and 2 of the agreement, the manifest intent of this elderly couple, both of whom had children and property by prior marriages, with respect to this property taken in their joint names, as well as all other property, is clear. They intended to resolve the dispute then existing with respect to their property rights by present settlement thereof. This is further corroborated by Mollie's quitclaim to Henry of February 10, 1954. While paragraphs 3 and 4 of the agreement, standing alone, support the contention of appellee and the holding of the probate court, read in context they do not express the manifest intent of the parties. Since that intent is not against public policy, the holding of the probate court is reversed and Mollie Yens is denied any rights in the Henry Yens estate."

Appellant claims that *Day* v. *Chamberlain,* 223 Mich 278, controls and is contrary to the trial court's decision.

The facts in *Day* v. *Chamberlain* disclose that it should not control in deciding this appeal. The agreement between husband and wife, under consideration in *Day,* commenced with the statement:

" 'Whereas, said parties are husband and wife and cannot live happily together, and therefore, they agree to separate and live apart and in consideration of the wife taking care of herself and buying her own clothes and paying her own board, the said husband agrees to give her $2,000, on the execution and delivery of this agreement.' "

This is in sharp conflict with the agreement in the present appeal where husband and wife made it clear that "The said parties agree to continue to live together as husband and wife," and counsel for appellant and appellee in the agreed statement of facts in this appeal stipulated that "The purpose of

the agreement on May 7, 1953, as stated was to determine the rights of the parties as to all of their property and the obligations towards each other."

The nine years of marriage that followed the Yens agreement differs greatly from the circumstances as disclosed in the *Day* opinion wherein our Court held the agreement was void not only because it was made "to effectuate, and in contemplation of, a future separation," but, also, because "the husband and wife were living and cohabiting together at the time and continued so to do for nearly two months thereafter."

We agree with the trial court's statement that the intent of the parties is all-important, and we conclude they made clear that intent, namely: That they were not entering into an agreement in contemplation of a dissolution or breaking up of the marriage, and recited as reasons for said agreement: (a) Their advanced age at the time of marriage; (b) That both owned property at the time of marriage; (c) That both had children by a previous marriage; (d) That a dispute had arisen concerning their respective rights both as to the property owned severally and as to the property acquired jointly during their marriage.

In the 1877 decision in *Randall* v. *Randall,* 37 Mich 563, Justice COOLEY, while considering an agreement between husband and wife entered into pursuant to an agreement to separate shortly followed by separation, stated that agreements "calculated to favor a separation which has not yet taken place will not be supported," and commenting upon contracts void because against public policy, Justice COOLEY had this to say (p 571):

"The chief difficulties with such contracts are encountered when they undertake to provide for a separation of the parties and a breaking up of the

marriage either with or without a divorce. It is not the policy of the law to encourage such separations, or to favor them by supporting such arrangements as are calculated to bring them about. It has accordingly been decided that articles calculated to favor a separation which has not yet taken place will not be supported."

The parties to the instant agreement expressly stated they were agreeing to "continue to live together as husband and wife," and there is nothing in the agreement that shows it was "calculated to favor a separation," or that it was drawn to "provide for a separation of the parties and a breaking up of the marriage." Instead of coming to such a conclusion, it is more logical to state that the parties now before this Court entered into said agreement with the hopes that the marital journey they had commenced as rather elderly people would continue on without discord if they eliminated the only dispute or problem they faced, namely: The eventual disposition of property owned severally at the time of marriage as well as that acquired jointly during the marriage.

Agreeing with the decision of the trial court, we affirm. Costs to appellee.

Smith, O'Hara, and Adams, JJ., concurred with Kelly, J.

Souris, J. (for reversal). I disagree with my Brother Kelly's conclusion that the postnuptial agreement here involved merits our judicial approval notwithstanding Mr. Chief Justice Cooley's perceptive admonition in Randall v. Randall, 37 Mich 563, against contracts violative of public policy. In that case the parties had agreed to separate before the written agreement was executed, and shortly thereafter did separate. While expressly

stating that agreements "calculated to favor a separation which has not yet taken place will not be supported", Chief Justice COOLEY, in *Randall*, approved the postnuptial agreement there involved because the parties previously had agreed to separate.

I would reverse the trial court's action here on the strength of *Randall, supra*, and *Day* v. *Chamberlain*, 223 Mich 278, from which the following directly pertinent quotation is taken (p 281):

"The separation agreement was void as against public policy. It was made, not in recognition of an existing separation, but to effectuate, and in contemplation of, a future separation. The husband and wife were living and cohabiting together at the time and continued so to do for nearly two months thereafter. It is well settled that a separation agreement so made is void. See *In re Berner's Estate*, 217 Mich 612; *Randall* v. *Randall*, 37 Mich 563. And we state another applicable rule (quoting from syllabus):

" 'If a contract is void as against public policy, the court will neither enforce it while executory, nor relieve a party from loss by having performed it in part.' *Richardson* v. *Buhl*, 77 Mich 632 (6 LRA 457)."

Courts favor settlement of property disputes when spouses have separated or are in the process of doing so. However, courts disapprove of property settlements in anticipation of possible future separation or divorce, since such anticipatory property settlements might tend to encourage separation or divorce, contrary to public policy.

The judgment should be reversed. Costs to appellant.

KAVANAGH, C.J., and DETHMERS and BLACK, JJ., concurred with SOURIS, J.