ROCKWELL *v*. ESTATE OF LEON ROCKWELL

1. HUSBAND AND WIFE—POST-NUPTIAL AGREEMENTS.

Post-nuptial agreements are not invalid *per se* and a post-nuptial agreement by a wife to release her interest in her husband's property on his death is valid if it is fair and equitable and supported by sufficient legal consideration (Const 1963, art 10, § 1; MCLA § 558.13).

2. HUSBAND AND WIFE—POST-NUPTIAL AGREEMENTS—POLICY.

This state approves a post-nuptial agreement in which a wife releases her interest in her husband's property on his death, if it is a fair and voluntary one for a fair consideration (Const 1963, art 10, § 1; MCLA § 558.13).

3. HUSBAND AND WIFE—POST-NUPTIAL AGREEMENTS—POLICY—SEPARATION.

Post-nuptial agreements are not favored where they seek to effectuate a separation or contemplate a future separation.

4. HUSBAND AND WIFE—POST-NUPTIAL AGREEMENTS—SEPARATION.

A post-nuptial contract providing for a disposition of property favoring the children of previous marriages of the parties was valid where the agreement did not undertake to provide for a separation, and where nothing in the record suggested either that the agreement was calculated to bring about a separation or that a separation was contemplated by the parties.

5. HUSBAND AND WIFE—POST-NUPTIAL AGREEMENT—CONSIDERATION —DOWER—CURTESY.

Mutual promises in a post-nuptial agreement by which the husband and wife each relinquished any claims in the real or personal estate of the other spouse constituted sufficient consideration for the contract where neither of the parties had

REFERENCES FOR POINTS IN HEADNOTES
[1–4, 6]  41 Am Jur 2d, Husband and Wife §§ 316–319.
[5, 7, 8]  41 Am Jur 2d, Husband and Wife §§ 262, 263, 316.

executed wills at the time of the agreement because each was waiving a share in the estate of the other to which he would have been entitled under the laws of intestate succession.

6. HUSBAND AND WIFE—POST-NUPTIAL AGREEMENTS.
   A party to a post-nuptial agreement cannot sit idly by and wait to see which estate appreciates or diminishes before choosing to act within the framework of the post-nuptial agreement or to refute it.

### CONCURRING OPINION

#### HOLBROOK

7. HUSBAND AND WIFE—POST-NUPTIAL AGREEMENTS—CONSIDERATION.
   *Some consideration other than marriage is necessary to support an executory post-nuptial settlement by which a spouse agrees to release his interest in the estate of the other; but mutual promises of a husband and wife to release to each other all right in and control over the other's property are sufficient consideration.*

8. HUSBAND AND WIFE—POST-NUPTIAL AGREEMENTS—CONSIDERATION —PREVIOUS MARRIAGES.
   *A post-nuptial agreement was properly upheld where both parties had children by previous marriages, each had substantial property, they were happily married, and they desired to assure each other that only the children of the husband would inherit his property and that only the children of the wife would inherit her property.*

Appeal from Benzie, William R. Peterson, J. Submitted Division 3 April 8, 1970, at Grand Rapids. (Docket No. 7,261.) Decided June 24, 1970. Application for leave to appeal denied December 31, 1970. 384 Mich 792.

Myrtle M. Rockwell elected to take against the will of Leon A. Rockwell. The Probate Court dismissed plaintiff's election because of a post-nuptial agreement. Plaintiff appeals. Affirmed.

*John B. Daugherty* and *Luyendyk, Hainer, Karr & Edens,* for plaintiff.

*John E. Hart,* for defendant.

Before: HOLBROOK, P. J., and BRONSON and E. W. BROWN,* JJ.

BRONSON, J. Leon Rockwell and Myrtle Rockwell were married on April 25, 1947. Leon and Myrtle each had children by previous marriages. On February 4, 1957 the couple executed a post-nuptial contract in which each agreed not to claim any part of the other's estate. Plaintiff expressly relinquished "all claim to any allowance, dower, homestead, or any other right in and to the real or personal estate" of Leon Rockwell. The intention of the parties to the contract was that their marriage should not alter the legal rights of their children from their prior marriages in the real and personal property of each of them. The agreement provided that each of their estates would rest in the heirs as determined by will or as if no marriage had taken place. On January 18, 1965, Leon Rockwell published a will bequeathing to plaintiff an amount less than that to which she would be entitled under an election. Two years later Leon Rockwell died. On July 3, 1967, plaintiff filed in the Benzie County Probate Court her election to take against the will pursuant to MCLA § 702.69 (Stat Ann 1962 Rev § 27.3178[139]). On January 8, 1968, plaintiff filed with the probate court a petition for a widow's allowance. The estate filed objections to the petition. On March 29, 1968, the probate court dismissed plaintiff's petition for widow's allowance, struck her election, and held the post-nuptial agreement valid. Contending that the agreement was invalid for lack of consideration and because it was contrary to public policy, plaintiff sought review in the circuit court for Benzie County. The circuit court affirmed the probate court's hold-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ing, and leave to appeal was granted by this Court on May 29, 1969.

On appeal, plaintiff raises two issues:

1. Whether a post-nuptial contract is invalid because contrary to public policy.

2. Whether a post-nuptial contract fails for lack of consideration when the husband only waives any claim in the future estate of his wife should he be the survivor.

## I.

Post-nuptial agreements are not invalid *per se.* In the majority of jurisdictions, including Michigan, a post-nuptial agreement by a wife to release her interest in her husband's property on his death is valid if it is fair and equitable and supported by sufficient legal consideration. 49 ALR 116, 122, citing *Randall v. Randall* (1877), 37 Mich 563; *Rhoades v. Davis* (1883), 51 Mich 306; *Owen v. Yale* (1889), 75 Mich 256; *Wright v. Wright* (1890), 79 Mich 527; *Dakin v. Dakin* (1893), 97 Mich 284; *Chittock v. Chittock* (1894), 101 Mich 367; *Bechtel v. Barton* (1907), 147 Mich 318; *La Plant v. Lester* (1907), 150 Mich 336. See, also, Const 1963, art 10, § 1; MCLA § 558.13 (Stat Ann 1957 Rev § 26.229); *M & D Robinson Company v. Dunitz* (1968), 12 Mich App 5.

There are several situations in which Michigan Law recognizes the validity of agreements such as the one involved in the instant case. Post-nuptial agreements made during an existing separation are thought to further judicial policy favoring settlement of controversies over litigation. *In re Berner's Estate* (1922), 217 Mich 612. In addition, Michigan is one of the majority of jurisdictions that approve post-nuptial agreements in which a wife releases her interest in her husband's property on his death (see Const 1963, art 10, § 1, and MCLA § 558.13 [Stat

Ann 1957 Rev § 26.229]), if it is a fair and voluntary one for a fair consideration. *Wright* v. *Wright, supra.* See, also, 49 ALR 116, 122. However, objections are validly raised to post-nuptial agreements where those agreements seek to effectuate a separation or contemplate a future separation. *In re Berner's Estate, supra,* at p 620. Plaintiff contends, citing language from *Day* v. *Chamberlain* (1923), 223 Mich 278, that the present case is within this latter category. *Day,* however, is distinguishable in that the preamble of the agreement held invalid in *Day* made it clear that the parties contemplated a separation in the near future. The present case involves no thought of such a separation.[1]

The public policy objection to post-nuptial contracts pointed out by the Court in *Randall* v. *Randall* (see footnote 1) and raised by plaintiff here does not arise in this case. The instant agreement did not undertake to provide for a separation. There is nothing in this record to suggest that the agreement was calculated to bring about a separation. Nor is there anything in this record to suggest that a separation was contemplated by the parties. To the contrary is the statement in the agreed facts that "at all times during this marriage * * * the parties lived together amicably and peaceably without dis-

---

[1] One commentator has thought that to deny a husband and wife the right to adjust property rights "might easily tend to foster the undesirable separation." Kunz, Family Law, 12 Wayne L Rev 319, 339 (1965). Indeed, going even further (as noted *supra*), Michigan recognizes post-nuptial agreements made during existing separation of married persons. See *In re Berner's Estate* (1922), 217 Mich 612, and *Randall* v. *Randall* (1877), 37 Mich 563. *Randall* points out, the objection to post-nuptial agreements:

"The chief difficulties with such contracts are encountered when they undertake to provide for a separation of the parties and a breaking up of the marriage either with or without a divorce. It is not the policy of the law to encourage such separations, or to favor them by supporting such arrangements as are calculated to bring them about. It has accordingly been decided that articles calculated to favor a separation which has not yet taken place will not be supported * * * ". p 571.

pute or controversy". The fact is that the parties lived as husband and wife for 10 years after the agreement was executed and until the husband's death.

The circuit court rejected plaintiff's argument that the agreement encouraged possible separation: "No authority is cited indicating that a post-nuptial contract is inherently disruptive of the marital state and hence suspect". In *Ransford v. Yens* (1965), 374 Mich 110, the justices of the Michigan Supreme Court voting for affirmance, in particularly applicable language, said:

"[T]he parties now before this Court entered into said agreement with the hopes that the marital journey they had commenced as rather elderly people would continue on without discord if they eliminated the only dispute or problem they faced, namely: The eventual disposition of property owned severally at the time of marriage as well as that acquired jointly during the marriage." 374 Mich at p 116.

The absence of intention of the parties to separate was determinative in *Ransford v. Yens, supra,* which affirmed, by an equally divided court, the circuit court's validation of a post-nuptial agreement by which the parties relinquished for sufficient legal consideration their claims to the other's separate estates. Four justices affirmed in *Ransford,* finding that the intention of the parties was to provide for the eventual amicable disposition of their property. The holding for affirmance was made in spite of two provisions of the agreement which looked to the possibility of a divorce.[2]

---

[2] The justices for reversal felt that the agreement was void as against public policy because it anticipated a possible future separation.

The instant agreement does not contain any reference to separation found offensive in *Ransford.* Indeed, it was entered into for a purpose found salutary in *Ransford,* namely, to provide for disposition of property favoring the children by previous marriages of the parties.

## II.

It is plaintiff's contention that the post-nuptial contract lacked sufficient consideration in that the husband's promise to relinquish any right in his wife's estate even in exchange for the wife's promise to relinquish her dower and widow's allowance amounted to nothing since he had no such right. The circuit court thought the mutual promises of the parties contained in the agreement constituted adequate consideration for the contracts, citing for this proposition *Keller* v. *Keller* (1926), 121 Kan 520 (247 P 433). The trial court on the basis of *Keller* felt that since neither of the parties had executed wills at the time of the agreement, each was waiving a share in the estate of the other to which he or she would have been entitled under the laws of intestate succession. Plaintiff argues that if such an analysis is followed, each party gave up only a possibility and not a present interest amounting to consideration.[3]

Michigan cases have discussed consideration in post-nuptial contracts in terms of dollar valuation and the Michigan Supreme Court has approved agreements where dollar amounts or an equivalent flowed to the wife in return for her release. Thus, in *Randall* v. *Randall* (1877), 37 Mich 563, $1,000 was "sufficient", and in *Rhoades* v. *Davis* (1883), 51 Mich 306, $900 was "good" consideration. In the

---

[3] In further support of the trial court's decision, see *Ransford* v. *Yens, supra, Carmichael* v. *Carmichael* (1888), 72 Mich 76, and *George* v. *Conklin* (1960), 358 Mich 301.

more recent *Ransford* case, $4,600 was acceptable for release as to property worth $6,000 at the husband's death. In *Wright* v. *Wright, supra,* the Michigan Supreme Court said, "there is no legal objection to an arrangement between husband and wife, for a fair consideration, to extinguish her right of dower." Plaintiff makes a strong case by relying on the decision in *Wright.* She gave up her prospective dower, allowing her husband to make a will giving her nothing in return for a waiver by her husband of his curtesy right, one not recognized by Michigan law. In return for a waiver of nothing more than an expectation, plaintiff argues, of a possible future inheritance by intestacy, the wife relinquished a statutorily defined and protected right. It is plaintiff's contention that the post-nuptial contract in the present case attempts to achieve that result which was overturned in *Wright.*

Under the facts as found in the present case, we must hold for the Estate of Leon Rockwell. In so doing we do not mean to overturn the line of case precedent cited *supra.* However, what we find here is that there was "fair consideration" flowing to plaintiff. Myrtle and Leon Rockwell each came to their marriage with children by previous marriages. It was their intention by enacting a post-nuptial agreement to insure the sanctity of their estates for their own children by those previous marriages. While it is true that Leon Rockwell gave up merely an expectancy, it is also true that he gave up the right to any share of Myrtle's estate upon the event that Myrtle, should she predecease Leon, would have her will contested and found inadequate at probate. It is further true that Leon could have by trust and gift given to his children that which he thought was

protected by the post-nuptial agreement.[4]  Now that Leon is deceased, it seems somewhat unjust to say that Myrtle has the option of contesting the post-nuptial agreement or allowing it to stand.  Had Myrtle predeceased Leon, it is doubtful that he could have come into court and argued that since he had given inadequate consideration, the post-nuptial agreement must fail.  Therefore, Myrtle seemingly, were we to accept plaintiff's position, would have the option upon Leon's death of upholding the post-nuptial agreement or refuting it.  In the instant case there is testimony to the effect that Leon's estate appreciated greatly after the post-nuptial agreement while Myrtle's did not.  In our view, a party to a post-nuptial agreement cannot sit idly by and wait to see which estate appreciates or diminishes before opting to act within the framework of the post-nuptial agreement or to refute it.  While it is true that the statutorily given right of dower and homestead are important ones and must be protected by our courts, in the present case we find that Leon's forbearance from distributing his estate by any method other than under the post-nuptial agreement should not be set aside at this late date.  Accordingly, we affirm the order of the probate court and the opinion of the Benzie County Circuit Court.

Affirmed.

HOLBROOK, P. J. (*concurring*).  In addition to that which has been stated in my brother judge's opinion, this writer deems it advisable to write this concurring opinion in support of sustaining the post-nuptial agreement executed February 4, 1957.  At the time both Mr. and Mrs. Rockwell had children by previous marriages, and each had substantial prop-

---

[4] In that respect it might be argued that he relied upon the post-nuptial agreement.

erty. They were happily married and desired to accomplish a worthwhile purpose, that of assuring each other that the children of Mr. Rockwell would inherit his property and the children of Mrs. Rockwell would inherit her property. Under the facts in this case, it appears that the general rule found in 41 CJS, Husband and Wife, § 91, pp 564, 565 applies:

"Some consideration other than marriage is necessary to support an executory postnuptial settlement by which a spouse agrees to release his or her interest in the estate of the other; but mutual promises of a husband and wife to release to each other all right in and control over the other's property are sufficient consideration."[*]

It is well also to relate what actually occurred subsequent to the date of the post-nuptial agreement. Leon A. Rockwell signed a will on the 18th day of January, 1965, and gave and bequeathed to the plaintiff herein a life estate in the home, furniture and household goods being used by them at the time of his death; the automobile, valued at $3,125 and $200 per month until her death or until she remarries, whichever occurs first. In addition, she was made beneficiary on a life insurance policy in the amount of $9,500. In plaintiff's petition to the probate court for a widow's allowance, she asserted that the inventory in the estate showed personal property, exclusive of household furniture, ornaments, and wearing apparel of the value of $106,474.65. Mr. Rockwell, several years after the post-nuptial agreement, purchased land and improved the same by building a gas station thereon, land and improvements costing more than $58,000.

---

[*] *Smith's Administrator* v. *Price* (1934), 252 Ky 806 (68 SW2d 422). *Hall* v. *Greenwell* (1935), 231 Mo App 1093 (85 SW2d 150). *Jorgensen* v. *Crandell* (1938), 134 Neb 33 (277 NW 785, 790). Also see 30 CJ p 637 note 41.

Mr. Rockwell's gross estate amounted to $184,-496.31, including real and personal property and life insurance in a total amount of $11,771.66. It is evident that Mr. Rockwell relied upon the post-nuptial agreement for he either purchased or improved purchased real estate to the extent of $58,000, made his wife beneficiary on a $9,500 life insurance policy and had personal property totaling $106,474.65 at the time of his death for a total of $174,974.65. This represented personal property or money invested in real estate available *if he had so chosen to dispose of it by trusts, gifts, or otherwise,* to his two sons, the main beneficiaries under his will. This Mr. Rockwell might very well have done but for his reliance on the post-nuptial agreement. Under the facts in this case, it is proper to uphold the post-nuptial agreement.

Affirmed.