IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2004 Session

## MIRA ANN (WALLER) MOSLEY v. CHARLES RAYMOND MOSLEY

**Appeal from the Chancery Court for Rutherford County**
**No. 01-2731 DR    Royce Taylor, Judge**

-------

**No. M2003-01686-COA-R3-CV - Filed October 29, 2004**

-------

The parties were married in 1980 with no children born of the marriage. The parties separated a number of times during their marriage. During a period of separation, in April of 1995, the parties signed a contract entitled Marital Dissolution Agreement, which, among other things, settled their rights in property acquired during their marriage. They reconciled in 1997 and lived together for some six months until their final separation, which was followed by Wife's Complaint for Divorce filed June 11, 2001. The trial court held that the Agreement had been freely executed by both parties and meticulously followed until the time of the divorce Complaint. The parties were divorced by joint stipulation pursuant to Tennessee Code Annotated section 36-4-129, and following final hearing, the trial court held the 1995 Agreement to be fair and equitable and divided property accordingly. Wife appeals, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., joined. WILLIAM C. KOCH, JR., P.J., M.S., filed a concurring opinion.

Brad W. Hornsby, Aaron S. Guin, Murfreesboro, Tennessee, for the appellant, Mira Ann (Waller) Mosley.

Roger W. Hudson, Murfreesboro, Tennessee, for the appellee, Charles Raymond Mosley.

### OPINION

Charles Raymond Mosley was 39 years of age and Mira Ann Mosley was 37 years old when they married in 1980. It was the first marriage for Mr. Mosley and the second marriage for Mrs. Mosley. At the time of this marriage, Wife owned property on Gillette Road in Davidson County, Tennessee and Husband owned property on Hollydale Drive, Williamson County, Tennessee. The Hollydale Drive property was sold, and $54,000 of equity proceeds from this sale went to the

purchase of property at 5202 Williamsburg Road in Brentwood with the Brentwood property deeded to both parties by a 1985 deed. From 1983 until 1993 Wife operated a jewelry business, which was closed in 1993 because of the illness of Wife's mother. Both parties were employed during the course of the marriage, and in 1984, they obtained a partnership interest in Hickory Hollow Mini-Storage Warehouse.

The parties had their difficulties during the marriage with repeated separations and reconciliations. From 1990 until the termination of the marriage in 2003 the parties maintained separate bank accounts and simply shared living expenses.

After being separated for seven months between late 1994 and May of 1995 the parties entered into what was called a Marital Dissolution Agreement. The intention of the parties is clearly expressed in their chosen language.

## MARITAL DISSOLUTION AGREEMENT

This Marital Dissolution Agreement is made and entered into, by and between Charles Raymond Mosley and Mira Ann Mosley, both residents of Tennessee.

### W I T N E S S E T H:

WHEREAS, the parties hereto have been married since November 14, 1980, and have had no children born during their marriage, and are not expect[ing] any children.

WHEREAS, it is the decision of the parties, insofar as they are able, without concurrence of the Court, to amicably settle their differences with respect to all property rights, support obligations, and obligations for payment of debts, and to enter into a formal contract for the settlement of such rights and obligations, not only for the present, but for the future, it being their intention that such contract will be effective with respect to all their property and other matters of concern irrespective of whether a divorce is finally concluded between the parties;

WHEREAS, the parties have experienced marital difficulties and the husband has or will initiated divorce proceedings in the Circuit Court for Davidson County, Tennessee;

NOW, THEREFORE, for an in consideration of the foregoing premises, and in consideration of the mutual covenants and agreements hereinafter contained, the parties do hereby agree as follows:

1.     The parties shall live separate and apart from each other and neither party shall harass or interfere with the other in any manner or in any way.

2.     Except as otherwise provided herein, each party waives, releases and relinquishes all rights that he or she may have or may hereafter acquire as the other party's spouse under the present or future laws of any jurisdiction.

3. This Marital Dissolution Agreement shall be binding on the parties, their heirs, legal representatives and/or assigns.

4. Each party understands and agrees that this Marital Dissolution Agreement constitutes the entire Agreement between the parties, that there are no representations, warranties or promises other than those set forth herein, and that this Marital Dissolution Agreement supersedes any prior understanding or Agreement which may have existed between the parties upon the subjects covered herein.

5. This Marital Dissolution Agreement may be altered, amended, or canceled only by instrument in writing signed by each of the parties, and this requirement cannot be waived by oral agreement.

6. This Marital Dissolution Agreement shall not be construed in any measure as a consent or condonation of a dissolution of marriage, but this Agreement shall not be a bar to any action for divorce heretofore filed or filed herewith. However, in the event of the subsequent dissolution of the marriage of the parties, it is agreed that this Marital Dissolution Agreement shall be exhibited to the Court which shall try any action between the parties and that this Marital Dissolution Agreement shall be made a part of the FINAL DECREE OF DIVORCE which shall specifically require the performance of the parties under the several provisions hereof, all subject to the approval of the Court.

7. The parties and each of them shall hereafter execute all instruments necessary to carry out the terms of this Marital Dissolution Agreement.

8. The parties have no children.

. . . .

20. The wife agrees to hold the husband harmless and to indemnify him on any debt or guaranty that he is called on to pay wherein she has herein agreed to pay the debt. The husband also agrees to hold wife harmless and to indemnify her on any debt or guaranty that she is called on to pay wherein he has herein agreed to pay the debt. Each party shall be solely responsible for any individual indebtedness each has created after November 1, 1994. Additionally, the parties agree that neither of them shall contract any indebtedness on the credit of the other, from and after the date of execution of this Marital Dissolution Agreement.

21. In the event a creditor of either party seeks to compel one party to pay any debt incurred by the other party for which that party is not responsible, either by contract [] pursuant to the terms of this Marital Dissolution Agreement, the party against whom such claim is made shall be entitled, to recover from the other party the amount of any payment he or she made, including interest, and any expenses incurred in defending the creditor's claim, including reasonable attorney's fees.

22. The wife agrees to pay her attorney's fees and one-half court costs in this cause.

23. In the event it becomes reasonably necessary for either party to institute legal proceeding to procure the enforcement of any provision of this Marital

Dissolution Agreement, he or she shall be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action.

24. It is understood and agreed between the parties that this Marital Dissolution Agreement is intended to be a final settlement of all property rights and support rights and obligations of the respective parties hereto and shall constitute a discharge from all claims arising out of their marital relationship except as provided herein. Each party hereby waives and relinquishes to the other all rights or claims which each may have or hereafter acquire under the law of any jurisdiction with respect to the other's property, including without limitation, dower, curt[se]y, statutory allowance, homestead rights, right to take against the [w]ill of the other, inheritance, descent or distribution, or right to act as administrator or executor of the other's estate except as provided by the terms of this Marital Dissolution Agreement. This Marital Dissolution Agreement applies to all property now owned by Charles Raymond Mosley and Mira Ann Mosley, individually or jointly, or any property that either of the parties may acquire in the future.

25. This Marital Dissolution Agreement shall be binding upon and inure to the benefit of the parties hereto, their personal representatives, heirs, and assigns.

26. It is understood and agreed between the parties that this Marital Dissolution Agreement is entered into without undue influence, fraud, coercion, or misrepresentation, or for any reason not herein stated. The provisions in this Marital Dissolution Agreement and their legal effect are fully known by each of the parties, and each party acknowledges that the Marital Dissolution Agreement is fair and equitable and that it is being entered into voluntarily. Mira Ann Mosley further acknowledges that Charles Raymond Mosley's attorney, has in no way advised her of her rights under this Marital Dissolution Agreement or in any way influenced her to sign same.

27. It is understood and agreed between the parties that, as part of the consideration for the execution of this Marital Dissolution Agreement, each party shall willingly execute and deliver any and all instruments necessary or required in order to implement the terms of this Marital Dissolution Agreement.

In paragraphs 9 through 19 of this Marital Dissolution Agreement the parties divide their properties in meticulous detail and provide in equal detail for the separate assumptions of debt of the parties with mutual hold harmless provisions:

9. The parties own real property located at 5202 Williamsburg Road, Brentwood, Tennessee, which shall become the property of the husband. The property secures the following joint debts of the parties:

(a) The mortgage owed to Home Savings of America.

(1). The husband agrees to pay the mortgage payment to Home Savings of America on or before the fifteenth day of each month.

-4-

(2).    The husband agrees to pay all taxes, insurance, upkeep, et cetera to maintain said property.

(3).    Any and all income arrived from said property will go to the husband.

10.    The limited partnership in Hickory Hollow Mini-Storage shall become the property of the wife.

(a) There is no mortgage on said property.

(1).    The wife shall be responsible for all fees associated with this investment.

(2).    The wife shall receive all tax benefits and income from said property.

11.    The house located at 353 Gillette Road, Nashville, Tennessee, shall become the property of the wife.

(a) The wife shall be responsible to pay all mortgages, taxes, insurance, and upkeep on said property.

12.    The Hillsboro Properties stock presently owned by Charles Raymond Mosley shall remain the property of the husband.

13.    The vehicles of the parties are to be divided as follows:

(a) The 1993 Buick Century shall go to the husband, who shall be responsible for any debt, insurance or upkeep on said vehicle.

(b) The 1990 Nissan Maxima shall go to the wife, who shall be responsible for any debt, insurance or upkeep on said vehicle.

14.    The husband shall receive the ten-horsepower (10-horsepower) Ariens Lawnmower and all other equipment pertaining thereto.

15.    The kitchen table and four (4) chairs in the possession of Darrell Flowers shall become the property of the husband.

16.    All personal property as previously divided shall remain in the possession of the parties as is.

17.    All individual checking accounts, savings accounts, and retirement accounts shall remain the property of the person therein.

18.    At the time of the entry of the Final Order in this cause, the wife will obtain health insurance for herself and auto insurance on the Nissan Maxima. The husband agrees to cooperate in changing these policies.

19.    The 1994 IRS will be filed jointly and the husband agrees to pay Twelve Thousand Five Hundred Thirty-Three ($12,533.00) Dollars.

The parties did not seek or obtain immediate divorce as apparently contemplated in 1995, but continued with their off and on reconciliation and separation pattern until finally obtaining the divorce on December 30, 2002, with division of property issues remaining to be tried. Husband filed a Motion with the trial court to enforce the Marital Dissolution Agreement that had been signed by the parties in 1995. The trial court declined to rule on this motion until after all the proof was heard and a bench trial was then held on February 10 and 11, 2003.

In its memorandum decision, the trial court held:

> These parties married November 14, 1980, the first marriage for the defendant and the second for the plaintiff who had a child by her first marriage. These parties had no children and separated in 1990. At that time, both parties began to maintain separate bank accounts. Between 1990 and 1995, the parties reconciled and again separated. At the time the marital dissolution agreement was executed in 1995, the parties had been separated for over a year. The plaintiff was living in an apartment and the husband residing in the jointly owned home. They divided the real property with the husband receiving the parties' jointly owned home and the wife receiving other real property and a partnership interest in real property. The debts were divided and the husband agreed to pay over $12,000.00 owing to the Internal Revenue Service. After 1995, the parties have not contracted any joint debts or acquired other jointly owned property. They have treated the marital property divided by agreement as separate property with the wife selling the property that she agreed to take. Immediately following the execution of the agreement, the wife acquired a residence through a gift from her brother. She subsequently signed a note on the property for which the husband is not liable.
>
> In 1997, the parties reconciled and the husband moved into the wife's residence. After approximately six months, the parties retreated to separate bedrooms, but continued to live in the same house until their separation February 1, 2001. During those years, the husband gave money to the wife or paid her mortgage payments during the majority of the months he resided there. Otherwise, the parties maintained totally separate finances except for filing joint tax returns when it was to their benefit. The joint tax returns did not affect financial dealings with their properties.
>
> Currently, the husband has equity in the home that he retained and a retirement account. The wife has no retirement account and little equity in her home. Without question, the wife would have assets equal to or greater than the husband, but for the fact that she has given significant amounts of her monies to family members in need. Her willingness to assist her family is certainly admirable, but she cannot now complain that her assets no longer equal that of her husband because of her generosity.

The evidence in this case clearly shows that both parties meticulously followed the provisions of the Marital Dissolution Agreement during the more than seven years that elapsed between the time of the Agreement and the time of their divorce.

The issues presented for review by Appellant are:

1.      Whether the trial court erred by ruling that the parties 1995 Marital Dissolution Agreement was enforceable when husband failed to institute divorce proceedings as provided in the agreement.

2. Whether the trial court erred by ruling that the parties 1995 Marital Dissolution Agreement was enforceable when neither party filed for divorce and then reconciled in 1997, and when Husband moved back into the marital home to live with wife in contravention of the Marital Dissolution Agreement.

3. Whether the trial court erred by ruling that the parties 1995 Marital Dissolution Agreement was enforceable when it was executed more than six years prior to Wife's filing a Complaint for divorce in 2001.

Certain well settled principles of law establish the scope of appellate review. A trial court's findings of fact will be reviewed *de novo* under Tennessee Rule of Appellate Procedure 13(d) with a presumption of the correctness of the findings of the trial court unless the evidence preponderates against such findings. On the other hand, the findings of law by the trial court enjoy no such presumption and will be reviewed *de novo* on appeal. *Hawks v. City of Westmoreland*, 960 S.W.2d 10 (Tenn. 1997).

Since trial judges, unlike appellate judges, have an opportunity to observe the manner and demeanor of witnesses while they are testifying, appellate courts routinely decline to second-guess the credibility determinations made by the trial court. *Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn.Ct.App. 1998). Trial courts are afforded wide discretion in dividing the interests of parties in jointly owned property. *Barnhill v. Barnhill*, 826 S.W.2d 443 (Tenn.Ct.App. 1991), *perm.app.denied* (Jan. 21, 1992); *Ford v. Ford*, 952 S.W.2d 824 (Tenn.Ct.App. 1996), *perm.app.denied* (July 14, 1997). Whether or not to award attorney's fees in this case is a matter resting in the sound discretion of the trial judge, which will not be disturbed on appeal unless the evidence preponderates against such action. *Barnhill*, 826 S.W.2d 443.

The appeal in this case is predicated entirely on the assumption that the 1995 Marital Dissolution Agreement between the parties is limited in effect to the type of Marital Dissolution Agreement mandated by Tennessee Code Annotated section 36-4-103 in the procedure required for a divorce on the grounds of irreconcilable differences. If the Agreement were so limited, the position of Appellant would be sound. The Agreement itself, however, makes it clear that such a limitation was not within the contemplation of the parties when the Agreement was executed.

Paragraph 6 of the Agreement provides in pertinent part, "[h]owever, in the event of the subsequent dissolution of the marriage of the parties, it is agreed that this Marital Dissolution Agreement shall be exhibited to the Court which shall try any action between the parties and that this Marital Dissolution Agreement shall be made a part of the FINAL DECREE OF DIVORCE which shall specifically require the performance of the parties under the several provisions hereof, all subject to the approval of the Court." Paragraph 24 of the Agreement, after reasserting that the Agreement is intended to be a final settlement of all property rights and support rights or obligations of the parties, states, "[t]his Marital Dissolution Agreement applies to all property now owned by Charles Raymond Mosley and Mira Ann Mosley, individually or jointly, or any property that either of the parties may acquire in the future." The judgment of the trial court does not purport to approve

the Marital Dissolution Agreement as being pre-requisite to an irreconcilable differences divorce, but rather as being a fair and equitable distribution of property.

In *Copeland v. Boaz*, 68 Tenn. 223 (1877), post-nuptial agreements between husband and wife were declared to be against public policy. The rule in *Boaz* was modified to provide that such an agreement was not against public policy if it was free from collusion. *Killibrew v. Killibrew*, 137 S.W.2d 953 (Tenn.Ct.App. 1939).

*Copeland v. Boaz* was later overruled by the supreme court in *Hoyt v. Hoyt*, 372 S.W.2d 300 (Tenn. 1963). In *Hoyt*, the parties were married in 1956, and a divorce action was filed in 1961. The parties then entered into a written agreement to affect a reconciliation, which agreement settled their respective interests in property. In upholding the contract, the supreme court held:

> We have a husband and wife, mature in age, each having been previously married, each having children from previous marriages, who have now reached the point in their own marriage where the wife has a divorce action pending against the husband. Under such circumstances these parties, each represented by counsel, have begun negotiations to the end this contract was executed, which had the apparent present intention of effecting a reconciliation of the parties. It is apparent from the contract property was one of the principal causes of friction between the parties, and by this contract they attempted to settle this matter between themselves for the present and the future.

*Hoyt v. Hoyt*, 372 S.W.2d 300, 303 (Tenn. 1963).

Any lingering doubt about the validity of post-nuptial agreements, whether in contemplation of separation, divorce, or reconciliation, was removed by the supreme court in *Bratton v. Bratton*, 136 S.W.3d 595 (Tenn. 2004).

> The agreement in the case under submission falls into a third category of agreements - - postnuptial agreements. While entered into by spouses after marriage, they differ from reconciliation agreements in that they are entered into before marital problems arise. Like both antenuptial and reconciliation agreements, postnuptial agreements seek to determine the rights of each spouse in the other's property, spousal support, and related issues in the event of divorce or death. *Black's Law Dictionary* 1167 (6th ed. 1990).

> Although postnuptial agreements were void and of no effect under the common law, most states to address the issue have now determined such agreements to be valid. *See, e.g., Tibbs v. Anderson*, 580 So.2d 1337 (Ala. 1991); *In re Estate of Harber*, 104 Ariz. 79, 449 P.2d 7 (1969); *Lewin v. First Nat'l Bank of Denver* (*In re Estate of Lewin*), 42 Colo. App. 129, 595 P.2d 1055 (1979); *Casto v. Casto*, 508 So.2d 330 (Fla. 1987); *Davis v. Miller*, 269 Kan. 732, 7 P.3d 1223 (2000); *Rockwell*

*v. Estate of Rockwell*, 24 Mich. App. 593, 180 N.W.2d 498 (1970); *Stoner v. Stoner*, 572 Pa. 665, 819 A.2d 529 (2003); *In re Estate of Gab*, 364 N.W.2d 924 (S.D. 1985); *Peirce v. Peirce*, 994 P.2d 193 (Utah 2000); *Button v. Button*, 131 Wis.2d 84, 388 N.W.2d 546 (1986). These courts have held that generally, spouses may divide their property presently and prospectively by a postnuptial agreement, even without it being incident to a contemplated separation or divorce, provided that the agreement is free from fraud, coercion or undue influence, that the parties acted with full knowledge of the property involved and their rights therein, and that the settlement was fair and equitable. *See* 41 Am.Jur.2d *Husband and Wife* § 134 (1995).

The rationale behind the decision of the Court of Appeals holding the agreement to be void as against public policy was that the contract only became operative by resorting to the courts in a divorce action, and yet it preempted the court from equitably assigning marital property or considering the issue of alimony as provided by statute. However, under this reasoning, any time a postnuptial agreement makes provisions for spousal support or property division in a way tailored to the parties' desires instead of following a statutory formula, the agreement would be invalid as against public policy. It has long been acceptable for parties to provide for property division or support in antenuptial and reconciliation agreements based solely on their personal wishes, as evidenced by an agreement, without consideration of any of the statutory factors. Thus to say that a postnuptial agreement is contrary to public policy due to its invasion into the province of the trial court is inconsistent with the State's acceptance of antenuptial and reconciliation agreements. For these reasons, we adopt the proposition that marital partners may validly contract to divide property or set support in the event of a divorce by postnuptial agreement, even without it being incident to a contemplated separation or divorce.

Generally, postnuptial agreements will be treated in the same manner as antenuptial and reconciliation agreements. That is to say, they should be interpreted and enforced as any other contract.

*Bratton*, 136 S.W.3d at 599-600.

Tennessee Code Annotated section 36-4-121 (Supp. 2003) specifically describes what constitutes "marital property" and "separate property" for the purposes of that chapter of the Code dealing with divorce and annulment. This case poses the question, can the parties to a marriage, by post-nuptial agreement, convert property which might otherwise be "marital property" into "separate property" and thereby bind themselves *in futuro*? Under the terms of section 36-4-121 and pursuant to *Bratton*, we would answer the question in the affirmative. First of all, though "separate property" is specifically defined under section 36-4-121(b)(2), the same statute provides in section (g)(1), "[n]othing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties regarding the division of property."

When this latter provision of the statute is read in conjunction with *Bratton* all doubt is removed:

> [W]e adopt the proposition that marital partners may validly contract to divide property or set support in the event of a divorce by postnuptial agreement, even without it being incident to a contemplated separation or divorce.
>
> Generally, postnuptial agreements will be treated in the same manner as antinuptial and reconciliation agreements.

*Bratton*, 136 S.W.3d at 600.

Like anti-nuptial agreements, such post-nuptial contract must be freely and knowledgeably executed by both spouses in good faith and without duress or undue influence affecting either spouse. *See* Tenn. Code Ann. § 36-3-501. In the case at bar, it is neither alleged nor proven that either party was acting under duress or undue influence or in any other way except freely, knowledgeably and in good faith when they executed the 1995 Agreement.

Equally compelling as a reason to uphold the validity of Agreement and the action of the trial court is the fact that the parties, subsequent to the execution of the Agreement in 1995, scrupulously honored its provisions. Doubtless, after 1995, the parties could have, by their actions, created a marital estate which would have been subject to distribution under Tennessee Code Annotated section 36-4-121 at the time of the December 2002 divorce. But all of the proof in this case establishes that the parties did not do so but continued to act in conformity with the 1995 Agreement. Under the Agreement Husband was to pay $12,533 to the Internal Revenue Service for the parties' tax liability in 1994. He did so. In 1995 and 1996, the parties filed separate tax returns with Wife claiming all income from the Hickory Hollow Mini-Storage Warehouse. In 1997, she sold the mini-storage warehouse with her signature alone being appended to the transfer documents and the $27,000 purchase price paid to her and her alone. She sold the Gillette Road property in 1997 taking all of the $40,000 equity therein. During the years the parties filed separate tax returns (1995, 1996 and 2001), Charles Mosley claimed the Brentwood, Williamsburg Road property on his tax return. Subsequent to 1995, and prior to the 2003 divorce, Wife used much of her money, realized from sale of her assets, to pay debts for her son and her sick niece's husband. Finally, between 1995 and 2003, the record clearly shows that the parties accumulated no marital property but continued to treat their assets as individual assets in accordance with the *in futuro* provisions of the Marital Dissolution Agreement.

The parties, despite their on and off relationship during their marriage, accumulated substantial property during their 23 year marriage. Beginning in 1990 they kept separate bank accounts and, in 1995, determined by post-nuptial agreement to settle their property rights both for the present and for the future. Thereafter, they scrupulously followed their Marital Dissolution Agreement. In the interim between 1995 and 2003, Wife disposed of much of the assets given to her under the Marital Dissolution Agreement. She used the proceeds of her dispositions to benefit

her son by a previous marriage and sick relatives. She now seeks a redistribution of alleged marital property which consists almost entirely of the corpus of and the fruits of property assigned to Husband in the 1995 Marital Dissolution Agreement.

Such being the facts of the case, the trial court correctly held that the Marital Dissolution Agreement was a fair and equitable distribution of the property of the parties, which is a particularly appealing action in view of the fact that the parties accumulated no marital property between the Agreement of 1995 and the divorce and property settlement decree in 2003.

Appellant seeks attorney's fees from Appellee pursuant to the provisions of the 1995 Agreement. The trial court did not allow attorney's fees but gave no reason for the decision. Whether or not to allow attorney's fees is largely in the discretion of the trial court, *Barnhill*, 826 S.W.2d 443. The trial court offered no reason for denying attorney's fees, but it is well to note that Appellant did not raise the 1995 Agreement in his Answer and Counter-Complaint and did not seek to enforce such Agreement until three days before the trial of this case on February 10, 2003. We will not disturb the action of the trial court in denying attorney's fees.

The action of the trial court is in all respects affirmed. Costs of this cause are assessed to Appellant. The case is remanded to the trial court for such further proceedings as may be necessary.

_____
WILLIAM B. CAIN, JUDGE